EMMA FLYNN *vs*. HELEN MARR MESSENGER.

July 29, 1881.

**Husband and Wife—Presumptive Agency of Wife.**—The common-law rule, that a married woman living with her husband is presumed to have authority from him to order such goods or services as are ordinarily required for family use, is not changed by the statutes regulating the rights and liabilities of married women. If the party dealing with the wife knows she is a married woman living with her husband, and the order is of a character to indicate that it is for the benefit of her husband's family, he is bound to presume that she is acting for her husband, and cannot hold her personally liable unless she expressly agrees to become so. The employment of a seamstress for ordinary domestic service in and for the benefit of the husband's family, *held, prima facie*, to be within the rule respecting the presumptive agency of the wife.

Appeal by defendant from a judgment of the municipal court of St. Paul, where the plaintiff sued the defendant (a married woman, living with her husband and children) for wages as a seamstress, under an oral contract of hiring, made between plaintiff and defendant. The defence was that, in making the contract, the defendant acted merely as the agent of her husband, and not on her own account.

*McMillan & Beals*, for appellant.

*Williams & Davidson*, for respondent.

CLARK, J. By the common law, a married woman living with her husband is presumed to have authority from him to order such things as are ordinarily required for family use. The rule is laid down by Lord Abinger, in *Emmett* v. *Norton*, 8 Car. & P. 506, in these words: "Where a wife is living with her husband, and where, in the ordinary arrangements of her husband's household, she gives orders to tradesmen for the benefit of her husband and family, and these orders are proper and not extravagant, it is presumed that she has the authority of her husband for so doing. This rule is founded on common sense, for a wife would be of little use to her husband in their domestic arrangements if she could not order such things as are proper for the use of a house, and for her own use, without the interference of her

husband. The law, therefore, presumes that she does this by her husband's authority."

There can be no doubt (especially under the statutes of this state, conferring upon a married woman the power to transact business, and make contracts which shall bind her) that it is perfectly competent for the wife to bind herself personally to the payment for such orders; but if the party dealing with her knows she is a married woman, living with her husband, and the order is of a character to indicate that it is intended for the benefit of the family, he is bound to presume that she is acting for her husband, and not on her own account, and cannot hold her personally liable unless she expressly agrees to become so. The principle is laid down in *Powers* v. *Russell*, 26 Mich. 179, in the following language: "Now, if he (the tradesman) knew that she was a married woman, living with her husband, and the goods were not of a character to indicate that they were bought for other than family use in the husband's family, and she did not claim affirmatively to be purchasing them on her individual account, the natural inference would be that she was purchasing them on her husband's account, and for the use of his family; and she could not be made individually liable without an express agreement to become so, or that the goods should be charged, or the credit given, to herself."

We do not think the statutory provisions regulating the rights and liabilities of married women have changed the obligation of the husband to support and maintain the family, nor taken away from the wife the presumption of authority, arising out of the marital relation, to act in his behalf in supplying the ordinary wants of his household. We have been referred more especially to Gen. St. 1878, *c.* 69, § 3, as changing the common law so as to make the wife individually liable for goods ordered by her for domestic use, unless she has express authority from her husband, and makes the purchase expressly on his account; but we do not think its scope is so broad. If it was intended to make so important a change in the law and the usages of society, it is to be presumed that the legislature would have declared it in express terms, and not left it to be brought about by implication

from other provisions, not directed to the rules of evidence connected with the marital relation, or the presumptions of the common law arising therefrom.

. These principles apply with equal force to the employment, by the wife, of servants for ordinary domestic service in and for the benefit of the husband's family, and dispose of this case. The plaintiff's case rested exclusively upon her own testimony. She testified, in substance, that the defendant engaged her as a seamstress to sew at her residence, where she lived with her husband and their children; that she went there in pursuance of such engagement, and sewed for 24 days upon clothing for the children; that she knew, at the time of the employment, that the defendant was a married woman, living with her husband and family; that the defendant agreed with her as to the amount of her wages, but did not mention her husband, or state who would pay her; that while she was at work in the family, the defendant told her she had property of her own, and her husband had property, and that she was going to sell some land, and, when she did, she would pay her; and that, two months after the completion of the service, she paid her four dollars on account thereof.

It does not appear from the evidence that, at the time of the employment, any express agreement was made that the defendant should be responsible, as principal, for the wages, or that anything occurred to take the case out of the ordinary presumption that the employment was in behalf of the husband; nor does it appear that the husband disputes his liability on the contract. What was said with reference to the ownership of separate property by the defendant, and the payment of the plaintiff from the proceeds of the sale, after the contract of employment was made, (which was, for reasons already stated, binding on the husband,) and while it was being performed, was not, we think, sufficient to shift the obligation of payment from the husband to the defendant, or to render her liable. It is to be regarded, under the circumstances, as a mere voluntary promise. We also think it is to be assumed, *prima facie* at least, in the absence of anything in the pleadings or proofs to the contrary, on grounds of common knowledge, that the service performed by the

plaintiff was an ordinary domestic service, such as the wife might reasonably employ for the benefit of the family.

It follows from these views that the motion to dismiss, when the plaintiff rested, should have been granted, and it is, therefore, unnecessary to consider alleged errors in the instructions to the jury.

Judgment reversed, and new trial granted.