SANDWICH MFG. CO. *vs.* JULIUS ZELLMER *et al.*

Submitted on briefs Dec. 1, 1891. Decided Feb. 10, 1892.

**Married Woman Estopped by Her Covenants.**—Under the provisions of the act of 1869, ch. 56, (1878 G. S. ch. 69,) in respect to the rights and contracts of married women, a married woman who unites with her husband in a conveyance of real estate, with covenants, and expressly joins in and becomes a party to such covenants, is estopped thereby as if unmarried.

**Her Capacity to Contract.**—The act was intended to invest a married woman with all the rights of a *feme sole,* as respects her contracts, save only as expressly excepted or reserved by its terms; and, among the contracts which she may make, she may obligate herself by a joint promise with him to pay or secure his debts.

**She can Join in Covenants with Her Husband.**—And though it is not necessary for her to join in the covenants of his deed, in order to bar her statutory homestead or dower interest, yet she is under no disability to obligate herself thereby, if she chooses so to do, and it is so expressed on the face of the deed.

**Exception as to Incumbrance Construed.**—Where an incumbrance is excepted generally from the operation of a deed, all the covenants therein are restricted by the exception. But a restricted covenant does not affect the operation of a succeeding covenant, not connected or of the same import with it.

**Same.**—A covenant of warranty is not restricted by an exception in a preceding covenant against incumbrances.

Appeal by plaintiff, the Sandwich Manufacturing Company, from a judgment of the district court of Rock county, *Perkins,* J., entered June 1, 1891, in favor of the defendants.

This action was commenced September 30, 1889, to foreclose a mortgage made by Julius Zellmer and his wife, Fredericke Zellmer, to plaintiff on September 11, 1882, upon a quarter section of land belonging to him, and on which they resided. The north half of the land was his homestead. The mortgage was given to secure the payment of their three joint promissory notes, each for $162.75, with 10 per cent. interest, and contained covenants as follows, viz.:

" The parties of the first part do covenant with the said party of the second part, its successors and assigns, as follows: *First*, that they are lawfully seised of said premises; *second*, that they have good right to convey the same; *third*, that the same are free from all incumbrances except a mortgage of seven hundred dollars; *fourth*, that the said party of the second part, and its successors and assigns, shall quietly enjoy and possess the same, and that the said parties of the first part will warrant and defend the title to the same against all lawful claims."

The prior mortgage thus excepted was made June 11, 1881, by Zellmer and wife to Henry L. Zaun, on the quarter section, to secure the payment of $700. Zaun foreclosed his mortgage February 24, 1885, under a power of sale contained in it. He bid it in at the sale, and assigned his certificate of purchase to C. A. Mead. The land was not redeemed, and Mead got title to the farm. On January 8, 1887, Mead conveyed the land to the defendant Fredericke Zellmer, the wife of Julius Zellmer. They conveyed the land on August 18, 1887, to Herman Zellmer, their son.

In this action Herman Zellmer and all persons claiming liens under him are made parties defendant. The plaintiff claims that, when Mrs. Fredericke Zellmer took title to the land from C. A. Mead, its mortgage became again a lien upon it by reason of her covenants.

The issues were tried and submitted March 28, 1890, and the court filed findings of fact, and as conclusions of law held that Fredericke Zellmer did not, by executing the mortgage to plaintiff, became personally liable upon the covenants therein, and that she and her grantee were not estopped to assert the title she afterwards obtained from Mead. The court ordered judgment that plaintiff's mortgage is no longer a lien upon the land, and it is entitled to no relief. Judgment was entered accordingly, June 1, 1891, and plaintiff appealed therefrom.

*E. H. Canfield*, for appellant.

By joining in this mortgage, Fredericke Zellmer became personally liable upon the covenants therein. She and her grantee, Herman Zellmer, are estopped to assert an after-acquired title to

defeat the appellant's mortgage. Under the laws of Minnesota, a married woman is personally liable upon her covenants contained in her deed. Our statute provides that a married woman shall be bound by her contracts, and her property shall be liable for her debts and torts, to the same extent as if she were unmarried, and a married woman shall be capable of making any contract, either by parol or under seal, which she might make if unmarried, and shall be bound thereby. 1878 G. S. ch. 69, § 2. Prior to 1869 the statute provided that a husband and wife might, by their joint deed, convey the real estate of the wife in like manner as she might do by her separate deed if she were unmarried, "but the wife shall not be bound by any covenant contained in such joint deed." 1866 G. S. ch. 40, § 2. All doubt about the power in this state of a married woman to bind herself by her covenants in a deed has been settled in *Dobbin* v. *Cordiner*, 41 Minn. 165.

On the proposition that a married woman is bound by her covenants in her deed or mortgage, and is estopped thereby to assert an after-acquired title, to defeat a former conveyance, see the following cases: *Yerkes* v. *Hadley*, 5 Dak. 324; *Knight* v. *Thayer*, 125 Mass. 25; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528; *Campbell* v. *Hall*, 16 N. Y. 575–579.

In this case Mrs. Zellmer became a surety for the payment of the debt by joining in the covenant to pay, contained in the mortgage. *Northwestern Mut. Life Ins. Co.* v. *Allis*, 23 Minn. 337. The extent to which she may become estopped is measured by the extent of her power to contract. *Bodine* v. *Killeen*, 53 N. Y. 93; 14 Amer. & Eng. Enc. Law, p. 637, note 7, and cases cited. If a married woman may guaranty or become surety for the payment of another's debt, and be bound by such agreement, there is no reason why she may not obligate herself, by covenants in her deed, to protect the title of the grantee, even though she never had any interest in the land.

Wherever statutes have enabled married women to enter into contracts as though single, there is no reason why the doctrine of estoppel should not apply to them, without limitation. Our statute provides that a married woman shall be capable of making any contract, either by parol or under seal, which she might make if unmarried,

and shall be bound thereby.    The decision of the trial court was to some extent based upon two Iowa cases.    *Childs* v. *McChesney*, 20 Iowa, 431; *O'Neil* v. *Vanderburg*, 25 Iowa, 104.    These cases arose before the passage of their statute enlarging the powers of married women, and are of no value in the determination of the case at bar. In *Thompson* v. *Merrill*, 58 Iowa, 419, the wife joined in covenants in her husband's deed of his land.    The statute then in force in that state read as follows: "In cases where either the husband or wife joins in a conveyance of real property owned by the other, the husband or wife so joining shall not be bound by the covenants of such conveyance, unless it is expressly so stated on the face thereof." Iowa Code, § 1937.    In that case it was not "expressly so stated." At the same time their Code, § 2202, gave a married woman the same general powers to contract that our statute gives.

Mrs. Zellmer could not deal with the first mortgage so as to cut out and destroy the lien of the second.    *Conner* v. *Howe*, 35 Minn. 518; *Probstfield* v. *Czizek*, 37 Minn. 420.

It is argued that the warranty and covenant to defend the title against all lawful claims was qualified by the exception of the $700 mortgage.    This court has held differently, and it is a sufficient answer to cite *Merritt* v. *Byers*, 46 Minn. 74.

It was also claimed by counsel that the covenants in the deed "can extend no further, are no wider, than the grantor's interest in the estate conveyed."    This is an absurd proposition, for in such case the covenants would never be good except when there is no use for them, and worthless when the title of the grantor fails.

*P. E. Brown* and *W. N. Davidson*, for respondents.

Conceding for the sake of the argument that Mrs. Zellmer was, under our statute, on the same footing as any unmarried person, is not the covenant of general warranty limited and governed in its scope by the reference to the $700 mortgage contained in the covenant against incumbrances?    *Bricker* v. *Bricker*, 11 Ohio St. 240; *Jackson* v. *Hoffman*, 9 Cow. 271.    Counsel for appellant is in error in supposing that this court has decided otherwise in *Merritt* v. *Byers*, 46 Minn. 74.    The decision in that case leaves this question undecided.    Mrs. Zellmer had nothing tó sell, and did not assume to

convey anything by this mortgage. As to her, the instrument was not a mortgage, but was a mere instrument of release, or assent to a release, of certain inchoate rights. Plaintiff had notice of her marriage relation, and knew that it was buying nothing whatever from her, but merely receiving a relinquishment of her two interests of homestead and dower. To relinquish these was all she could do,— all that she was required or expected to do. Surely the words contained in the instrument showing her to be the wife of the mortgagor have an office and intent. It is only such rights that this instrument purports to reach, and her warranty can extend no further than her right. Such a warranty cannot be wider than the interest relinquished. "The covenant estops the covenantor only from subsequently asserting a title, adverse to what he assumed to convey, which if successfully asserted will defeat the conveyance." *Thielen* v. *Richardson*, 35 Minn. 509; *Godfrey* v. *Thornton*, 46 Wis. 677.

What reason exists for the application of the equitable doctrine of estoppel here? Are there any equities apparent in favor of the plaintiff, any point in the whole record showing that the principle of good faith has been violated by Mrs. Zellmer? She was merely the surety of her husband in the promissory notes.

The warranty, if she made one at all, applies only to the essential facts underlying her interest in the property, to wit, that she was the lawful wife of Julius Zellmer; that she and he were lawfully seised of the property as husband and wife, merely; that her rights as a wife existed in the estate; and she warranted that her relinquishment was real and substantial. These things she warranted, if anything.

At common law a *feme covert* was merely estopped by her covenants regarding her own real property. She was never liable on them as covenants. *Colcord* v. *Swan*, 7 Mass. 291; *Nash* v. *Spofford*, 10 Met. (Mass.) 192. What, then, has been the effect of the modern statutes intended for the enlargement of the sphere of women? Mr. Wells, in his work on the Separate Property of Married Women, says at page 299 that the effect of such statutes is "to let in upon their conduct the doctrine of estoppel, and to give it the same bearing upon their acts and omissions as it has upon those of others, so far as their separate property is concerned."

When a married woman joins with her husband in his deed for the sole purpose of enabling him to pass the title, free from her inchoate right of dower, such deed cannot be said to be her contract for any other purpose than the release of her dower. A court of equity, when its power is invoked, will look beyond the mere form into the substance of the transaction, and give effect to the contracts of the parties according to the true intent and meaning which the parties themselves understood attached to them at the time they were made. It cannot be said, at least in equity, that by signing and acknowledging the deed of her husband, for the sole purpose of releasing her dower, she makes the deed her own, and subjects herself to liability on the covenants of title. *Sanford* v. *Kane*, 133 Ill. 199; *Schaffner* v. *Grutzmacher*, 6 Iowa, 137, 145; *Childs* v. *McChesney*, 20 Iowa, 431–437; *O'Neil* v. *Vanderburg*, 25 Iowa, 104, 107; *Blain* v. *Harrison*, 11 Ill. 384; *Strawn* v. *Strawn*, 50 Ill. 33; *Raymond* v. *Holden*, 2 Cush. 264.

VANDERBURGH, J. On the 11th day of September, 1882, the defendants Julius Zellmer and Fredericke Zellmer, his wife, executed and delivered to the plaintiff the three several notes or contracts in writing described in the complaint, whereby they agreed to pay the plaintiff, in the aggregate, the sum of $488.29. They were given in consideration of, and to secure, the individual indebtedness to plaintiff of Julius Zellmer to that amount. They also, at the same time, duly executed the mortgage deed set up in the complaint, which instrument contained a covenant against prior incumbrances "except a mortgage of $700," and also a covenant for quiet enjoyment and possession, and "that the parties of the first part, Julius and Fredericke Zellmer, his wife, would warrant and defend the title to the said premises against all lawful claims." At the time of the execution of the mortgage, which conveyed the northeast quarter (N. E. $\frac{1}{4}$) of section six, (6,) in township one hundred and one, (101,) range forty-five, (45,) including the homestead of the mortgagors, the defendant Julius was insolvent. The title to the land stood in his name, and the mortgage was given to secure his indebtedness above mentioned. There was a prior mortgage upon the premises, running to one Henry Zaun, for about $700, which is

the incumbrance referred to in the mortgage to plaintiff. The last-named mortgage was foreclosed in 1885. The title passed under the foreclosure, and afterwards the owner conveyed the same by deed to the defendant Fredericke Zellmer, subsequently recorded; and thereafter, in the year 1887, she, by deed of conveyance, in which her husband duly joined, conveyed the same premises to Herman Zellmer.

The question here presented is whether the defendant Fredericke, who expressly joined in the covenants in the mortgage to plaintiff, is bound thereby; for if she is liable thereon, or is estopped thereby, as if she had not been under coverture, the conveyance to her inured to the benefit of the plaintiff by virtue of her covenant, and its mortgage is operative as a valid subsisting lien upon the land, as against her and her assignee, Herman Zellmer. It is hardly necessary to refer to the nature of a married woman's disability at the common law. She was not bound by her contracts or covenants, and was not estopped thereby from setting up an after-acquired title. It was competent for the legislature to emancipate her from such disability, and enable her to obligate herself as if unmarried. The question here involved turns upon the construction of the statute of this state touching the rights and liabilities of married women. Prior to the act of 1869, ch. 56, the statute had secured to them their separate estate, real and personal, with the rents, profits, and income thereof. But she could not dispose thereof without the consent of her husband; and her general, common-law disability to make contracts remained. 1858 Pub. St. ch. 61, § 106, p. 571; Revision 1866 G. S. ch. 69, and ch. 40, § 2; *Carpenter* v. *Leonard*, 5 Minn. 163, (Gil. 119;) *Tullis* v. *Fridley*, 9 Minn. 81, (Gil. 68.) But the provisions of Laws 1869, ch. 56, were radical and sweeping, and were intended, in respect to her contracts, to invest a married woman, not merely with the right to contract in respect to her separate property, but with all the rights and liabilities of a *feme sole*, save only as expressly excepted or reserved by the same statute. It was evidently the intention of the legislature to define clearly the nature and extent of such rights and liabilities. *Kingsley* v. *Gilman*, 15 Minn. 59, (Gil. 40;) *Northwestern Mut. Life Ins. Co.* v. *Allis*, 23

Minn. 337. This statute does not, of course, have any reference to the domestic relations, or affect the rules of evidence, or the duty of the husband to provide for his family, though the wife might obligate herself for such purpose. *Flynn* v. *Messenger*, 28 Minn. 208, (9 N. W. Rep. 759.) In *Northwestern Mut. Life Ins. Co.* v. *Allis,. supra*, the wife had mortgaged her separate real property to secure a debt of her husband, which was evidenced by their joint note. The mortgage was not only held valid, but she was held personally liable for the deficiency upon foreclosure by action. It was con-tended that she was not liable because of the provisions of section three, (3,) which exempted her from the debts of her husband; but the court say, (page 341:) "To give this effect to the section would be to allow inference and conjecture to qualify and restrict the meaning of the clear and precise language of the act removing the wife's common-law disability to contract. Section 2 provides that 'any married woman shall be capable of making any contract, either by parol or under seal, which she might make if unmarried, and shall be bound thereby.' Then follow clearly expressed exceptions to her power to contract without her husband, relating only to her real estate. Section 4 expressly retains the common-law disabilities of husband and wife to contract with each other relative to the real estate of either. * * * 'But in relation to all other subjects either may be constituted the agent of the other, or contract each with the other, as fully as if the relation of husband and wife did not exist.'" No doubt the defendant in that case would have been bound upon her covenants in the mortgage as well as her husband, and a covenant of warranty would have passed an after-acquired title. *Knight* v. *Thayer*, 125 Mass. 27; Bigelow, Estop. (5th Ed.) 406, 407; *Kenworthy* v. *Sawyer*, 125 Mass. 28; *Goodnow* v. *Hill*, Id. 587.

In the case at bar the defendant Fredericke, as to the payee, the plaintiff, made the debt her own by signing the note. She joined in the mortgage of the quarter section, containing the homestead, to secure this debt. She also joined in the covenants therein, including the covenant of warranty. It is contended, however, that she is not bound by the covenants in the mortgage, because she must be pre-

sumed to have joined in the mortgage solely for the purpose of releasing the homestead or dower interest in the land; and it is claimed that the authorities in other states, particularly Illinois, support this contention. But no consistent general rule can well be formulated under the varying statutes of the different states on the subject, in connection with local statutes regulating the conveyance of real estate. It is true, the wife's signature was necessary to pass a perfect title; but she was under no disability whatever in the matter of the execution of a deed with covenants, or the acknowledgment thereof. Though described as wife, her acknowledgment, under the statute, is that of a *feme sole*. Her husband was insolvent, and her covenants would afford additional security to the plaintiff. She was legally competent to enter into such covenants, and upon the face of the deed appears to have done so. For all the purposes thereof it was her contract; and it seems to us it would be a strained and unreasonable construction to give the deed the limited effect contended for it. When a deed on its face purports to convey a restricted or partial interest in land, the covenants, though general, will be limited to such interest. *Sweet* v. *Brown*, 12 Met. (Mass.) 177. But where a deed assumes to convey the land, and the covenants are unrestricted, it is difficult to see how the court can limit or apportion its application, if it gives any effect to it at all. Here, (to repeat,) it will be observed, the covenant reads, "and the said Julius Zellmer and Riecke Zellmer, his wife, parties of the first part, do covenant * * * that the said parties of the first part will warrant and defend the title to the said premises against all lawful claims." Dower is in the nature of an incumbrance. Is the covenant of the wife operative to estop her as against a claim of dower subsequently arising, or does the deed simply release her present right, and is the covenant of both operative as to the legal title and estate of which the husband is seised, or does her covenant, if it is operative at all, relate merely to her statutory interests as wife? In view of her capacity to bind herself by her covenants, if operative at all, we are of the opinion that the covenant referred to must be construed in its natural and broader, and not in the restricted, sense. In construing a similar statute in Massachusetts, the court say: "The provision in the act that nothing

therein shall authorize her to convey property to, or make contracts with, her husband, is evidently not intended to impose any new restriction on her capacity, but merely to affirm the common-law rule, so far as the husband is the other party to the contract or grant, but does not prevent both of them from binding themselves by a joint promise to a third person." *Major* v. *Holmes,* 124 Mass. 108.

The acts of 1875 and 1876, superseding dower, and making provisions in lieu thereof, place the husband and wife substantially on the same footing as respects rights in the real property of each other. Construed in connection with the homestead law, and the act concerning married women of 1869, the case stands thus: In whichever one the title to the homestead may be, neither can convey the same without the other. The wife's signature is necessary to the deed of other lands belonging to the husband, in order to pass a clear title; and the husband must join in all conveyances of the wife's lands. In Iowa they have a statute (Code, § 1937) in respect to liability upon covenants in such deeds, which is as follows: "In cases where either the husband or wife joins in a conveyance of real property owned by the other, the husband or wife so joining shall not be bound by the covenants of such conveyance unless it is expressly so stated on the face thereof." We have no such saving clause in our statute. Whether there ought to be is a matter addressed to the legislature, rather than to the courts. In the absence of it, to attempt to place a limited construction upon such deeds, contrary to the fair and natural signification of the language used, is not warranted by the statute, or supported by sound reason. Mortgages frequently contain other express covenants than those relating to the title; as, for example, in this instance, to pay the debt or to pay taxes. Shall a married woman be bound by such covenants, and exempt from liability for the others? If she joins in all, there can be no reason why she should not be personally liable in all alike, since she is capable of so binding herself; and, if she is so liable, they must operate by way of estoppel. The courts are careful and conservative in the construction of statutes of this character, which are in derogation of the common law; but they cannot make exceptions and limitations which the statute does not warrant.

2. The disposition made of the question of the liability of Frederïcke Zellmer upon the covenants in her husband's deed renders it necessary to consider the effect of the exception of the prior mortgage from the covenant against incumbrances upon her liability upon the covenant of warranty in the plaintiff's mortgage. The covenant runs in this way: "That the same is free from all incumbrances except a mortgage of seven hundred dollars;" but no other reference to that mortgage appears upon the face of the instrument. The question whether such an exception qualified or affected the covenant of warranty in the same deed was considered, but not finally decided, in *Merritt* v. *Byers*, 46 Minn. 74, (48 N. W. Rep. 417.)   *Jackson* v. *Hoffman*, 9 Cow. 273, is not in point; for there the grant was subject to the mortgage, so that all the covenants related to the estate as so incumbered. But in *Bricker* v. *Bricker*, 11 Ohio St. 240, the rule is laid down and approved that a preceding special covenant against incumbrances, which excludes the incumbrance complained of, is to be regarded as an exception of such incumbrance in the covenant of general warranty. This case is, however, not generally accepted as authority, and the better opinion, following the reasoning of Lord Ellenborough, in *Howell* v. *Richards*, 11 East, 633, is that the covenant of warranty is not limited by the preceding restricted covenant against incumbrances. The two covenants are not connected, and are not of the same nature or import. *Estabrook* v. *Smith*, 6 Gray, 570; *Ogden* v. *Ball*, 40 Minn. 94, (41 N. W. Rep. 453.) In *Howell* v. *Richards, supra*, it was held that a limited covenant for good title and good right to convey did not restrain or qualify the succeeding covenant for quiet enjoyment. The covenant for title and good right to convey are "connected covenants, generally of the same import and effect, and directed to one and the same object; and the qualifying language of one may therefore properly enough be considered as virtually transferred to and included in the other; but the covenant for quiet enjoyment is of materially different import, and directed to a different end.   *   *   *   And it is perfectly consistent with reason and good sense that a cautious grantor should stipulate in a more restrained and limited manner for the particular description of the title which he purports to convey than for quiet enjoy-

ment." The exception in the deed is notice of the incumbrance, and exempts the grantor from an action upon the particular covenant; and this is all the effect that can be given to it. *Bennett* v. *Keehn*, 67 Wis. 162, (29 N. W. Rep. 207, and 30 N. W. Rep. 112,) and cases. A prudent grantor may desire that the deed shall state the truth,—and he is obliged to give the grantee notice of an incumbrance, (1878 G. S. ch. 40, § 34;) and he may know or believe that the incumbrance will be removed before it ripens into a title which would be ground for an eviction, so that he might risk a warranty against an eviction, when he might be unwilling to take the risk of a present liability for a breach of the covenant against incumbrances. "The same prudence, therefore, which might require the qualification of one of these covenants, might not require the same qualification of the other, affected, as it is, by different considerations, and addressed to a different object." *Howell* v. *Richards, supra.* If it is the wish or purpose of the grantor to make his conveyance subject to the mortgage, so as to affect and qualify all the covenants, or to except an incumbrance from the covenant of warranty, it is very easy for him to do so; and no careful conveyancer would fail to make the exception from all, as well as one, of the covenants in the deed, if it was the grantor's purpose to exempt himself from all liability. In *Gerdine* v. *Menage*, 41 Minn. 417, (43 N. W. Rep. 91,) it was assumed that the exemption was general. Upon the point under consideration, reference is made to the authorities cited in *Merritt* v. *Byers, supra,* and also to *Ruggles* v. *Barton*, 16 Gray, 152.

Reversed and remanded.

(Opinion published 51 N. W. Rep. 379.)