SUSIE BELYEA v. MINNEAPOLIS, ST. PAUL & SAULT SAINTE MARIE
RAILWAY COMPANY.[1]

May 29, 1895.

Nos. 9056—(90).

**Personal Injuries of Wife—Damages.**

   In an action by the wife for personal injury, she is not entitled to re-
cover expense incurred for medical treatment for such injury, as her hus-
band, and not she, is liable for the payment of the same.

**New Trial—Misconduct of Counsel.**

   A new trial is granted for the misconduct of the attorney of the prevail-
ing party in offering prejudicial, incompetent evidence, and in persisting
in discussing the same in his argument to the jury, though his offer was
ruled out, and in still persisting in so discussing it notwithstanding the
ruling of the court that he should not do so.

Appeal by defendant from an order of the district court for Grant
county, C. L. Brown, J., denying a motion for a new trial. Reversed.

*Alfred H. Bright,* for appellant.

*J. W. Reynolds,* for respondent.

CANTY, J.[2]   This is an action for damages for personal injury
to the plaintiff while a passenger on defendant's railroad.   On the
trial the jury returned a verdict for plaintiff for the sum of $8,000,
and from an order denying its motion for a new trial defendant ap-
peals.

Plaintiff was not entitled to recover the expenses incurred for
medical treatment, as these were expenses for which her husband
was liable, and for which she was not liable.   See Skoglund v. Min-
neapolis St. R. Co., 45 Minn. 330, 47 N. W. 1071.   But whether the
exceptions to the rulings of the court on this point are sufficient
it is not necessary to decide, as the case must be reversed on another
point.

At the close of the trial, and after the physicians in attendance
had gone away, the plaintiff was recalled on her own behalf, and.

1 Reported in 63 N. W. 627.          2 Buck, J., absent, took no part.

testified that she was examined at noon the day before by the two physicians, who were expert witnesses on behalf of the defendant. She stated that at the close of the examination she cried.   She was then asked why she cried.   Her answer was in part interrupted by an objection, which was sustained, and then the following proceedings took place: "Mr. Reynolds:   The doctor stated that one of the principal symptoms of hysteria was the fact that she cried during the time the examination was being made.   We propose to prove that the crying was not caused by emotional excitement, but by the conduct of the physicians making the examination and their remarks.   Mr. Bright:   We object to any such offer being made. Court:   The counsel may make the offer.   Mr. Bright:   We take an exception.   Mr. Reynolds:   We offer to prove by this witness that, at the time when Doctors Hunter and Jones made this examination, they required her to undress absolutely, and when in that condition they made insulting remarks in reference to her person, and familiar remarks about the beauty of her eyes and the symmetry of her limbs, and the kind of clothing she wore, and about her relations to her husband, and that was what induced her crying, and that is what she cried for."   Defendant's objection to this offer was sustained.

During the argument of plaintiff's counsel to the jury, at the close of the evidence, the following proceedings took place: "Mr. Reynolds said:   We made an offer to prove what occurred at the residence of Mr. Belyea during the noon hour.   This offer was objected to by defendant's counsel, and excluded by the court.   It is not a matter for your consideration; yet counsel for the defendant has referred to the offer, and made it the basis of an hour's argument.   We wish counsel had not objected.   I wish this testimony could have been introduced.   I would have shown that the offer was not without foundation, as he claims, but that there was perpetrated the most villainous outrage.   Mr. Bright:   We object to the remarks of counsel relative to this offer.   Court:   Mr. Reynolds, this offer is not in evidence, and you will not discuss it.   Mr. Reynolds: Counsel for defendant has referred to the offer.   Court:   You made no objection to it.   Mr. Reynolds:   I wish I could have shown to this jury the infamous conduct of those two doctors.   (To which statement Mr. Bright excepts.)"

We are of the opinion that, for this misconduct on the part of the counsel for the plaintiff, the verdict should be set aside. He gave it as a pretext for making his offer that "the doctor stated that one of the principal symptoms of hysteria was the fact that she cried during the time the examination was being made," and in his argument in this court he attributed this statement to Dr. Hunter. The evidence of Dr. Hunter is returned here, and it contains no such statement. It was brought out on the cross-examination of Dr. Hunter that, in his opinion, plaintiff had hysteria. He was asked on such cross-examination if she cried at the close of the examination, and he stated that she did, but he did not state what caused her to cry, or that such crying was a symptom of hysteria. On the contrary, he was asked: "Q. What did you find in the expression of her eyes to indicate hysteria? A. I don't know as I can describe it; the peculiar expression of her eyes; her color."

This charge against these physicians was clearly prejudicial to the defendant, and may have had much to do with the rendition of so large a verdict. It sufficiently appears that the charge was not made in good faith. This appears not alone from the fact that Dr. Hunter never gave the testimony attributed to him, but also from the fact that counsel persisted in disregarding the rulings of the court, and reiterating the charge in his argument to the jury after the court had ruled that he must not discuss it.

For this misconduct of counsel, the order appealed from is reversed, and a new trial granted.