## LEE A. BOLAND v.
## CHARLES HENRY MORRILL AND ANOTHER.

148 N. W. (2d) 143.

January 13, 1967—No. 40,174.

*Nemerov, Perl & Hunegs, Norman Perl, Hanson & Grinley,* and *A. K. Grinley,* for appellant.

*Robb, Robb & Van Eps, Douglas Dale Reid, Jr., M. W. Gaughan, Peterson & Peterson,* and *John R. Peterson,* for respondents.

ROGOSHESKE, JUSTICE.

The question presented on this appeal is whether a wife's recovery of her past medical expenses, as an assignee of her husband, in her separate

action for personal injuries caused by negligence bars a subsequent suit by her husband for his personal injuries and loss of services of his wife caused by the same negligence.

The question arises in this way. On December 15, 1961, plaintiff, Lee A. Boland, Mabel Boland, his wife, and Ida Boland, his mother, were involved in a collision with an automobile owned and driven by Charles Henry Morrill. Lee A. Boland was driving an automobile owned by his employer, The Good Samaritan Home. Mabel Boland and Ida Boland were passengers in that vehicle. All of the Bolands sustained personal injuries. Mabel Boland, by William Orr, her guardian, brought suit against Charles Henry Morrill, his employer, Olson Manufacturing Company, and the Good Samaritan Society. Ida Boland sued the same defendants and added her son, Lee A. Boland. Both claimants were represented by counsel who represents plaintiff in this action. In the Ida Boland case, the Good Samaritan Society and Lee A. Boland, represented by counsel employed by an insurance carrier, cross-claimed for indemnity. Charles Henry Morrill sued the Good Samaritan Society and Lee A. Boland. These cases were consolidated and tried to verdict in October 1962.

During the course of trial, Lee A. Boland was called as witness for his wife. As the trial court expressly found in this action, by plaintiff husband's testimony he orally waived and assigned to his wife his right to recover past medical expenses incurred in treating her injuries. Although the wife had separate earnings, there is no evidence that she either paid or personally incurred or assumed liability for these expenses or that her husband refused or was unable to pay them. Mabel Boland recovered $125,000, of which approximately $11,000 was for medical expenses. Her recovery was based upon findings by special verdict that, while both drivers were negligent, the negligence of Charles Henry Morrill was the sole cause of the collision. Judgment in the Mabel Boland action was entered against Morrill and Olson Manufacturing Company on November 1, 1962.[1]

On December 5, 1962, Lee A. Boland brought the present action against Morrill and Olson for his personal injuries and for the loss of

[1] The issue of liability of Olson Manufacturing Company was affirmed on appeal. Boland v. Morrill, 270 Minn. 86, 132 N. W. (2d) 711.

services of his wife resulting from the same accident. He did not include as an element of damages his wife's medical expenses. Defendants' motion for summary judgment was granted on the ground that he had split a single and indivisible cause of action. The court, applying the rule of former adjudication as declared in Myhra v. Park, 193 Minn. 290, 258 N. W. 515, held the remainder of his cause of action to be barred.

■ Necessarily underlying the court's ruling is a determination that the wife has no right to sue for medical expenses absent the husband's assignment. If a wife living with her husband under the circumstances presented has such right to sue, the husband's assignment was mere surplusage and the rule against splitting the cause of action would not apply.

It is a widely accepted general rule that at common law, and even under provisions of modern statutes emancipating a married woman from her husband, the husband is deemed to have the exclusive right to recover for past medical expenses made necessary by injury to his wife and the wife has no right of action except under unusual circumstances such as where she has paid or expressly or impliedly assumed liability for such expenses. Annotation, 66 A. L. R. 1189. The reason for the rule is that married women's acts removing the disability of married women to independently contract and incur liability were not intended to free the husband of his common-law duty to support his wife and to be liable for her necessities. Our agreement with the general rule was first declared in Belyea v. Minneapolis, St. P. & S. S. M. Ry. Co. 61 Minn. 224, 63 N. W. 627. Earlier, Skoglund v. Minneapolis St. Ry. Co. 45 Minn. 330, 47 N. W. 1071, 11 L. R. A. 222, recognized the husband's right to recover. In Libaire v. Minneapolis & St. L. R. Co. 113 Minn. 517, 523, 130 N. W. 8, 10, upholding the wife's right to recover her loss of wages, the court approved the general rule and stated:

"* * * It is well settled * * * in this state, that where damages to a wife, resulting from defendant's actionable fault, have in no part been caused by the wife's own wrong, two distinct causes of action may accrue—one to her, for the direct injuries to her person and the like; the other to her husband, for the consequential injuries to him, consisting of loss of her services and society, and of expense to which he may have

been put, and the like. The wife is allowed to sue in her own name for her injuries which are direct."

Thereafter, Fink v. Baer, 180 Minn. 433, 434, 230 N. W. 888, reiterated the rule announced in Belyea but, as an exception, permitted the wife to recover where her husband had died after the accident but before trial and she had assumed liability for and paid her medical expenses. The court stated that, even if the husband were living, the wife's assumption of liability and payment of expenses allows her to claim them because her payment shows that the husband had no cause of action for the expenses since he would not be and could not be "put to expense" for them. Where the wife has paid such expenses, many cases hold that the wife may sue and recover.[2] The Fink case was followed and extended in Paulos v. Koelsch, 195 Minn. 603, 263 N. W. 913, where, despite no proof of pretrial payment, the court allowed recovery by a wife who had not lived with nor been supported by her husband for 5 years.[3] Permission to sue and recover was upheld because the circumstantial evidence of her separate maintenance, coupled with her acceptance of the medical services which she alone requested, established by implication that she assumed liability for the expenses. The court brushed aside objections of the possibility of double recovery by stating that de-

---

[2] See, Ryan v. State, 192 Misc. 408, 77 N. Y. S. (2d) 764; Southeastern Air Serv. v. Crowell, 88 Ga. App. 820, 78 S. E. (2d) 103; Rearick v. Manzella (Mo. App.) 355 S. W. (2d) 134; Hains v. Parkersburg, M. & I. Ry. Co. 75 W. Va. 613, 84 S. E. 923. Some cases emphasize the fact she paid out of her own estate or property. See, Lewis v. American Brewing Co. (La. App.) 32 So. (2d) 109; De Fossez v. Lake George Marine Industries, Inc. 281 App. Div. 1002, 120 N. Y. S. (2d) 449. Others hold the payment may even be made with money she obtained from her husband. See, City of Chicago v. Gurrell, 137 Ill. App. 377; Chesapeake & O. Ry. Co. v. Stump, 165 Ky. 708, 178 S. W. 1037; Stewart v. George B. Peck Co. 234 Mo. App. 864, 135 S. W. (2d) 405 (where doctor's charge is made against wife not employed outside the home). The importance of payment is shown by the fact a wife has been held able to recover for medical expenses she sustained by reason of her husband's injury. Follansbee v. Benzenberg, 122 Cal. App. (2d) 466, 265 P. (2d) 183, 42 A. L. R. (2d) 832.

[3] Accord, Roper v. Brooks, 201 La. 135, 9 So. (2d) 485 (lived apart 4 months).

fendant's payment to the wife would be a perfect defense to a suit by the husband.[4] In other jurisdictions, mere assumption of liability for medical expenses, which, as demonstrated in Paulos v. Koelsch, *supra,* may be shown by circumstantial evidence,[5] has been held sufficient to support the wife's recovery.[6]

---

[4] In Complete Auto Transit, Inc. v. Floyd, 214 Ga. 232, 104 S. E. (2d) 208, the court stated that if recovery were given the wife other than in special circumstances, as where she contracted to be personally bound, there would be danger of double recovery for the medical expenses from the tortfeasor.

[5] See, also, Seifert v. Milwaukee & S. T. Corp. 4 Wis. (2d) 623, 91 N. W. (2d) 236.

[6] It has been held that the wife can recover where she incurred "amounts * * * on her own initiative" (Holmes v. Hollingsworth, 234 Ark. 347, 349, 352 S. W. [2d] 96, 98); where she has contracted or incurred liability for her medical treatment (Rearick v. Manzella [Mo. App.] 355 S. W. [2d] 134); where she agreed to pay, the bills were sent to her, and the doctor initially looked to her for payment (Conde v. Cox, 115 Ohio App. 278, 185 N. E. [2d] 32); if she assumed primary liability for the medical expenses—a personal obligation independent of the husband's primary liability (Sams v. Albers Super Markets, Inc. 86 Ohio App. 167, 89 N. E. [2d] 101); where she made herself legally liable for the medical expenses—as she could if she chose (Hickey v. Shoemaker, 132 Ind. App. 136, 167 N. E. [2d] 487); where she agreed with the doctor and nurse to pay the medical bills (Baum v. Bahn Frei Mutual Bldg. & Loan Assn. 237 Wis. 117, 295 N. W. 14); where she specifically contracted in her own name, and the credit was given to her so as to overcome the presumption that she was acting as her husband's agent (Fulcomer v. Pennsylvania R. Co. 141 Pa. Super. 264, 14 A. [2d] 593); and where she incurred the bills and would be obliged to pay them, although she had not done so yet (Schnirman v. Don, 117 Conn. 685, 169 A. 270).

Conversely, courts have based their refusal to allow the wife recovery upon the absence of evidence she paid or incurred personal liability for the bills (Public Utilities Corp. v. Oliver [8 Cir.] 64 F. [2d] 60); of "anything to show an implied or express contract on her part to pay for such medical services" (Hudock v. The Youngstown Mun. Ry. Co. 164 Ohio 493, 497, 132 N. E. [2d] 108, 111, 59 A. L. R. [2d] 365); or of a showing of an express contract or that the hospital could successfully sue her where the husband usually paid her medical bills (Dwyer v. Jackson Co. 20 Wis. [2d] 318, 121 N. W. [2d] 881).

Approaching the question from the standpoint of the wife's liability for medical services, it is true that under provisions of the married women's acts in this [7] and other states a married woman may enter into and be bound by any contract to the same extent as if unmarried. However, where the goods and services contracted for are "necessaries" for which the husband is liable under his duty to support the wife,[8] the cases reviewed indicate that to render the wife personally liable they must be supplied on her individual credit.[9] That is to say, her liability must be based upon a showing of her unequivocal assumption of liability by contract, express or implied in fact from the circumstances.[10] Where she has not so contracted to the exclusion of her husband, she is not to be held liable, even though she receives the benefit, by reason of the presumption that a wife living with her husband is acting as his agent in purchasing services and articles of necessity. Flynn v. Messenger, 28 Minn. 208, 9 N. W. 759. In that case it was held that a seamstress could not recover wages in an action against a wife for services performed at the wife's request which were beneficial to the family despite the fact that she told the seamstress she had property of her own, this not being "sufficient to shift the obligation of payment from the husband to the defendant or to render her liable." [11] 28 Minn. 210, 9 N. W. 760.

It should be noted that with respect to some articles of necessity the statute makes the wife jointly liable with the husband. Minn. St. 519.05 provides in part:

"* * * Where husband and wife are living together, they shall be jointly and severally liable for all necessary household articles and supplies furnished to and used by the family."

---

[7] Minn. St. 519.03 provides in part: "Every married woman * * * may make any contract which she could make if unmarried, and shall be bound thereby * * *."

[8] Section 519.05 provides in part: "* * * [N]or shall any married man be liable for any torts, debts, or contracts of his wife, committed or entered into either before or during coverture, except for necessaries furnished to the wife after marriage, where he would be liable at common law."

[9] 41 C. J. S., Husband and Wife, § 63.

[10] 41 C. J. S., Husband and Wife, § 335.

[11] See, Note, 32 Minn. L. Rev. 262, 277.

However, Flynn v. Messenger, *supra,* held this statute, absent a clearly expressed legislative declaration, was not intended to change the common law and make the wife liable for all necessities absent her express assumption of liability. Whether or not such interpretation is now open to question, the phrase "household articles and supplies furnished to and used by the family" cannot reasonably be deemed to include medical services.

Some states have statutes either expressly authorizing a wife's suit to recover her medical expenses in a personal injury action[12] or have interpreted their married women's acts to permit the wife to recover this element of damages.[13]

Section 519.01,[14] which was in effect when Belyea v. Minneapolis, St. P. & S. S. M. Ry. Co. *supra,* was decided, allows the wife to sue for her claims without joining her husband. Under the authorities discussed, medical expenses resulting from injuries to the wife are not the wife's claim but that of her husband. In the case under review, the evidence is undisputed that the wife neither paid nor expressly or impliedly assumed liability for her past medical expenses. Her recovery was, and could only be, based upon the assignment of her husband's right to recover. Accordingly, we must hold that she had no cause of action for such expenses absent the assignment.

■  Stated in the context of our present Rules of Civil Procedure, it has long been settled in this state that all claims of a party for relief arising out of an occurrence giving rise to any one claim must be joined in one lawsuit. King v. Chicago, M. & St. P. Ry. Co. 80 Minn. 83, 82 N. W. 1113, 50 L. R. A. 161; Myhra v. Park, 193 Minn. 290, 258 N. W. 515. The rule serves to protect a defendant against vexatious litigation; but, more important in these times of congested court calendars, its

---

[12] Woodard v. City of Des Moines, 182 Iowa 1102, 165 N. W. 313.

[13] See, e. g., Helmstetler v. Duke Power Co. 224 N. C. 821, 32 S. E. (2d) 611; Purcell v. Goldberg, 34 Cal. App. (2d) 344, 93 P. (2d) 578.

[14] "Women shall retain the same legal existence and legal personality after marriage as before, and every married woman shall receive the same protection of all her rights as a woman which her husband does as a man, including the right to appeal to the courts in her own name alone for protection or redress * * *."

proper application also serves the public interest in judicial economy by preventing needless delay and the expense of trying cases piecemeal.

In the similar case of Myhra v. Park, *supra,* a husband and wife suffered personal injuries in a two-car collision. We held that the occurrence gave rise to a single cause of action in the husband[15] and that he could not split and litigate in two separate lawsuits a claim for damages to his person and property and thereafter a claim for consequential damages resulting from the injuries to his wife, including her past medical expenses. We have also held that under the doctrine of merger a recovery of an assigned part of a claim extinguishes the cause of action and bars further prosecution for the balance of the original claim.[16]

Although circumstances may justify litigating claims separately, such as plaintiff's excusable ignorance or mistake (especially where induced by defendant's fraud) or defendant's consent,[17] no such circumstances are shown or claimed in this case. Plaintiff offers no explanation for the necessity of the assignment nor any justifiable excuse for delaying his suit and thus effectively preventing the possibility of a consolidated trial of his claims with those asserted by his wife.[18] Rather, as the trial court suggests, plaintiff's "[c]hoice of dividing the items of his cause of

---

[15] The contrary holding in Skoglund v. Minneapolis St. Ry. Co. 45 Minn. 330, 47 N. W. 1071, 11 L. R. A. 222, was rejected and in effect overruled. It should now be so regarded since under our present Rules of Civil Procedure the concept of "claim for relief" is substituted for the more restrictive "cause of action" and a claim for consequential damages to a wife cannot now be treated independently from all claims for relief of the husband arising out of a single occurrence.

[16] Wasgatt v. First Nat. Bank, 117 Minn. 9, 134 N. W. 224, 43 L. R. A. (N. S.) 109; Hayward v. State Farm Mutual Auto. Ins. Co. 212 Minn. 500, 4 N. W. (2d) 316, 140 A. L. R. 1236.

[17] Restatement, Judgments, § 62; Vineseck v. G. N. Ry. Co. 136 Minn. 96, 161 N. W. 494, 2 A. L. R. 530.

[18] We do not encourage the practice of having the same attorney represent both the driver and passenger in a two-car collision even where all the parties have consented after a full disclosure and the driver's claim against the third party is not asserted until the passenger's claim against the driver has been satisfied.

If the attorney has discharged his responsibilities properly by promptly

action appears to have been made deliberately," presumably as a matter of trial strategy and upon advice of his present counsel, who represented his wife and mother at trial. Since it is clear that the rule prohibiting splitting a cause of action would have precluded plaintiff from prosecuting successively separate actions for each of his claims resulting from the accident, he cannot do so indirectly by assigning a part of his claim. Even though in this case no multiplicity of actions against defendants results, the record under review requires the application of the rule to advance its primary, underlying public purpose.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

investigating the claims of both clients, inevitably he will be faced with the problem of using the confidential information he received from the driver to establish against him the claim of the passenger. Conversely, the confidential information he receives from the passenger will be utilized on behalf of the driver to defeat that claim or deprecate the damages.

Lawyers do well to avoid both the opportunity for collusion and the appearance of disloyalty, however faithful to their clients they may in fact be. A. B. A. Canons of Professional Ethics, Canons 6 and 37, adopted May 2, 1955 (241 Minn. xvii); Jedwabny v. Philadelphia Transp. Co. 390 Pa. 231, 135 A. (2d) 152; In re Blatt, 42 N. J. 522, 201 A. (2d) 715; A. B. A. Committee on Professional Ethics and Grievances, Opinion 99; William Nelson Cromwell Foundation, N. Y. City Bar Assn. Committee on Professional Ethics, Opinions 109, 378, 652; N. Y. County Lawyers Assn. Opinion 425.