CROUSE, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*January 10 — February 21, 1899.*

*Railroads: Injury to engineer by washout: Contributory negligence: Special verdict: Proximate cause: Evidence: Burden of proof: Medical experts: Annuity tables: Damages: Husband and wife: Costs: Printing.*

1. In an action by a locomotive engineer against a railroad company for personal injuries sustained in consequence of a washout at a culvert, it appeared that he was not proceeding with the caution

Crouse vs. Chicago & Northwestern R. Co.

required by the rules of the company in case of sudden and heavy rains or indications of high water, but it did not appear conclusively that he knew that the rains in that vicinity had been so severe or unusual as to call for the exercise of such caution. *Held*, that he was not guilty of contributory negligence as a matter of law.

2. A verdict in such action that the track was negligently constructed and unsafe, so that an ordinary rain storm would wash it out; that it was not properly inspected on the night in question; and that the injury was the result of the washout, without contributory negligence on the part of the plaintiff, is a sufficient finding as to proximate cause.

3. Upon the question, submitted for special verdict, whether the culvert was negligently constructed and maintained by the defendant so as to render it inadequate for the purpose for which it was constructed, the burden of proof was upon the plaintiff. Sec. 1816, Stats. 1898 (providing for a recovery where a railroad employee is injured by a defect in any track, when such defect could have been discovered by reasonable and proper care, and that proof of such defect shall be presumptive evidence of knowledge thereof on the part of the company), did not relieve him from such burden, since the question related to original defects in the culvert before the washout, and until such defects were shown to exist the presumption of knowledge thereof did not arise.

4. Upon the questions whether the washout could have been discovered by defendant's employees by the exercise of reasonable care in time to prevent the accident, and whether the track walker was negligent in not properly inspecting the track, the burden of proof was also upon the plaintiff, when it appeared that the washout had occurred within a few hours of the accident and that the company in fact had no notice of it.

5. A refusal to submit questions for a special verdict as requested is not error where those submitted cover all the material issues.

6. An hypothetical question to an expert witness, which, after stating in detail the particulars of the plaintiff's injury, his symptoms, treatment, and subsequent physical condition, asks the witness what in his judgment was the cause of the plaintiff's condition, *held* proper.

7. In an action by a married man for personal injuries, he is entitled to recover the value of his wife's services in nursing him, rendered necessary by the injuries.

8. In an action for personal injuries producing permanent disability, the annuity tables found in the Revised Statutes are admissible upon the question of damages, but they are to be considered in con-

Crouse vs. Chicago & Northwestern R. Co.

nection with all other evidence on that issue, and not to be treated as the mathematical basis for determining such damages.

9. The fact that the plaintiff is a married man cannot be considered in determining the damages for a personal injury.

10. A railway company is not charged with an absolute duty to its employees to make its culverts safe, but only with reasonable and ordinary care and prudence to make them safe, considering their uses and purposes.

11. The printed case herein, containing the bill of exceptions in full, and the appellant's brief, which fails to make the proper references to the record, are *held* not to comply with Supreme Court Rules VIII, IX; and an allowance for the printing thereof was properly refused in the taxation of costs.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This is an action for personal injuries. On and prior to July 26, 1896, the plaintiff was a locomotive engineer in the employ of the defendant, running between Oshkosh and Janesville. On the night of July 26th, at about 11:50 o'clock, the plaintiff was running the engine attached to a freight train southward over the defendant's railroad, and ran into a washout about a mile and a half north of the city of Janesville, and was seriously injured. The washout had occurred during a heavy rainstorm on the evening in question, and it was located at a place where there had been for many years a small, wooden culvert. The complaint charges the defendant with negligence in originally building the culvert too small, and by allowing it to become out of repair and unsafe, and by digging away the supporting earth and gravel on one side of the culvert, thus rendering the roadbed weak, and by failure to patrol the track and warn the plaintiff of the washout. The evidence showed that the plaintiff left Oshkosh, with his freight train, at a little after 4 o'clock in the afternoon, and that about 8 o'clock in the evening, when between Juneau and Clyman, it rained; that at Koshkonong he was flagged, and stopped his train, and the section foreman of that section told him that his

section was all right, and to go ahead. The rain continued, and near Milton Junction he could see that it had been raining hard. He stopped at Milton Junction long enough to get a clearance slip for Janesville, which is eight miles distant, and left Milton Junction at about 11:15 p. m. It was dark and rainy, with occasional flashes of lightning. He testifies that his train, at the time of the accident, was going ten or twelve miles an hour, and there is testimony on the part of some of the other train employees that it was going from fifteen to eighteen miles an hour. After going under the bridge called Black bridge, by a flash of lightning he suddenly saw in the track a black place fifty or sixty feet in front of him, looking like a bridge. He knew there was no bridge there, and that it must be a washout. He had twenty-six cars in his train, and testifies that it was impossible to stop before reaching the washout, so he opened the throttle and made a run for it. The engine went over the washout, being pressed forward by the weight and momentum of the train behind, and stopped suddenly off the rails. The plaintiff was thrown against the fire box, and seriously injured.

A special verdict was demanded and rendered as follows, and, in connection therewith, a general verdict was rendered for the plaintiff: "(1) Was the culvert in question so constructed and maintained as to conduct through it the water which it was intended to conduct through, not only in ordinary showers, but in severe showers that would naturally occur during a series of years, and which could reasonably be anticipated? A. It was not. (2) Was the culvert in question negligently and carelessly constructed and maintained by the defendant company, or its agents or employees, so as to render it inadequate for the purpose for which it was constructed? A. It was. (3) Was the said culvert carefully and thoroughly inspected from time to time by the employees of the company whose duty it was to give such inspection? A. It was not. (4) Did the nearness of the gravel pit to the cul-

Crouse vs. Chicago & Northwestern R. Co.

vert, in the month of July, 1896, render said culvert unsafe, in view of the water that might be conducted through it? *A.* Yes, it did. (5) Was the rainstorm on the night of July 26, 1896, extraordinary, unusual, and unexpected in its character, or unprecedented, and one which had only occurred at such long and irregular intervals that it would not be anticipated by men of ordinary prudence in their business calculations? *A.* It was not. (6) Might the washout in the track have been discovered by the defendant railway company by reasonable and proper inspection and in time to have prevented the accident? *A.* Yes, it might. (7) Was the storm which occurred on the night of July 26, 1896, one likely to cause damage to the defendant's roadbed and track, where the culvert in question was situated? *A.* It was. (8) Was the defendant's servant Stageman guilty of any negligence in not properly and carefully inspecting the road near where the culvert was, on the night in question? *A.* He was. (9) Was the plaintiff in the exercise of ordinary care at and prior to the time of his injury? *A.* He was. (10) Was the plaintiff injured, on the night in question, in consequence of the washout without contributory negligence on his part? *A.* He was. (11) What damages has the plaintiff sustained in consequence of the injury received on the night in question? *A.* $20,000."

Judgment was entered on the verdict for the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Fish, Cary, Upham & Black,* attorneys, and *C. H. Van Alstine,* of counsel, and oral argument by *Mr. Van Alstine* and *Mr. John T. Fish.* They argued, *inter alia,* that the plaintiff was guilty of contributory negligence, as matter of law, by his failure to use the highest degree of care called for by the rules of the company, in view of the severity of the storm which caused the washout. *Nolen v. N. Y. & N. H. R. Co.* 25 Am. & Eng. R. Cas. 342, 345; *Pennsylvania Co. v. Whitcomb,* 111

Ind. 212, 219; Elliott, R. R. §§ 1280–1283. There was no sufficient finding of proximate cause to support the judgment. *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348; *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147, 154, 155; *Maitland v. Gilbert P. Co.* 97 Wis. 476; *Davis v. C., M. & St. P. R. Co.* 93 Wis. 470, 482. The plaintiff was not entitled to recover the value of his wife's services in nursing him, it being a duty she owed to him. *Peterson v. Oleson,* 47 Wis. 131; *Goodhart v. Pennsylvania R. Co.* 5 Am. & Eng. R. Cas. N. S. 364, 366; *Drinkwater v. Dinsmore,* 80 N. Y. 390, 393; *Chicago, B. & Q. R. Co. v. Johnson,* 24 Ill. App. 468, 470; 2 Thompson, Negligence, 1258, § 44; *Reed v. C., R. I. & P. R. Co.* 8 Am. & Eng. R. Cas. 180; *Owen v. Peoples P. R. Co.* 155 Pa. St. 334; *Wallace v. W. N. C. R. Co.* 41 Am. & Eng. R. Cas. 212, 215; *Chicago & E. I. R. Co. v. Holland,* 30 Am. & Eng. R. Cas. 590; *Coleman v. Burr,* 93 N. Y. 17, 25.

For the respondent there was a brief by *Fethers, Jeffris & Mouat,* and oral argument by *O. H. Fethers* and *M. G. Jeffris.* They argued, among other things, that the plaintiff was entitled to recover for the services of his wife as nurse. *The D. S. Gregory,* 2 Ben. 286; *Pennsylvania Co. v. Marion,* 104 Ind. 239; *Brosnan v. Sweetser,* 127 Ind. 1; *Indianapolis v. Gaston,* 58 Ind. 227; *Denver & R. G. R. Co. v. Lorentzen,* 49 U. S. App. 81; *Forbes v. Loftin,* 50 Ala. 396; *Klein v. Thompson,* 19 Ohio St. 569; *Missouri, K. & T. R. Co. v. Holman,* 39 S. W. Rep. 130; *Ohio & M. R. Co. v. Dickerson,* 59 Ind. 317; *Cunningham v. E. & T. H. R. Co.* 102 Ind. 478, 484; *Murray v. M. P. R. Co.* 101 Mo. 236; *Varnham v. Council Bluffs,* 52 Iowa, 698; *Fort Worth & D. C. R. Co. v. Kennedy,* 12 Tex. Civ. App. 654; *Summers v. Tarney,* 123 Ind. 560. It was the duty of the railroad company to use all reasonable and proper care to build and maintain a culvert large enough to safely carry the water through it. *Jarnek v. Manitowoc C. & D. Co.* 97 Wis. 537.

Crouse vs. Chicago & Northwestern R. Co.

Winslow, J.   1. It was very strenuously insisted by the defendant's counsel on the argument of the case that the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law.   In this connection the following rules of the railroad company, with which the plaintiff was familiar, were put in evidence: "Rule 128. Freight and special trains must not pass over any switch at a speed exceeding ten miles an hour."   "Rule 410. The protection of the trains of the company from accident during storms, and from danger of the track and bridges being washed out by sudden and heavy rains and rise in streams, *especially if they occur in the night,* is of the greatest importance, and all employees in the operating department are directed to familiarize themselves with the following instructions, and carry them out strictly."   "Rule 414. Conductors and engineers on the road, when overtaken between stations by such storms or indications of high water which will cause damage, will proceed with great caution, keeping their trains under complete control, and at such speed that they can be stopped, after coming in sight of any obstruction or damage to track, in time to prevent accident.   They will stop to examine bridges and culverts or other places liable to be damaged by high water, and, if they find any indication of danger from proceeding with their trains, will, on the arrival at the first telegraph station, call up the agent or operator, and report to the office of their respective division superintendents for instructions, and will not proceed until such instructions are received."

The evidence showed that the plaintiff was an experienced engineer, forty-two years of age, and had run trains over this section of road for upwards of sixteen years.   It is claimed that the plaintiff, by his own statement, shows that he was operating his train at a negligently high rate of speed as he approached this culvert, and that he violated rules 128 and 414, above quoted, and that by reason of such violation of rules the accident happened.   We are not able to agree

with the contention that contributory negligence was proven as matter of law. While it appears that there were very heavy rainstorms at or near Janesville during the afternoon and evening in question, it does not appear conclusively that the plaintiff knew that these storms were so severe or unusual in their nature as to call for the exercise of the precautions demanded by rule 414, above quoted. The plaintiff testified that an ordinary rain commenced to fall when his train was two miles south of Juneau, and that it rained while they were running about seven miles, and then stopped; that at Milton Junction he could see that it had been raining a little harder, and there was water standing in the fields; that it was then raining, but not heavily, and continued to rain until they reached the washout. There is nothing inherently improbable in his testimony, nor is the testimony of opposing witnesses so conclusive on the subject as to render the plaintiff's testimony incredible. It does not appear by undisputed testimony that the train "was overtaken between stations by such storms or indications of high water" as would require him to proceed with great caution under rule 414. There was testimony from which this fact might be well found, but it is not conclusively proven. Nor does it appear that there was any switch at, or in the immediate vicinity of, the washout, by reason of which the speed should have been reduced to ten miles an hour under rule 128.

2. It is argued that proximate cause is not found by the verdict, and hence that the judgment cannot be sustained. When a train plunges through an unsafe bridge, there is little room to speculate on proximate cause. If the bridge was constructed for the passage of heavy trains over it, and was negligently and unsafely constructed, the destruction of a train and the loss of human life thereon must necessarily be contemplated by any reasonable man who built it. He cannot say that he did not anticipate an accident. Such a

claim would be puerile. As well might a municipal corporation which has left an open pit in a street defend on the ground that it could not anticipate that a traveler would fall into it. The question as to proximate cause was sufficiently answered when it was found that the viaduct was negligently constructed and unsafe, so that an ordinary rainstorm would wash it out, and was not properly inspected on the night in question, and that the plaintiff was injured, in consequence of the washout, without contributory negligence on his part.

3. In this connection it is urged that the verdict of the jury to the effect that the rainstorm on the night in question was not an extraordinary and unprecedented storm is contrary to the evidence. Examination of the evidence, however, convinces us that the question was fairly one for the jury.

4. It is also urged that it was error to allow certain medical experts to answer a long hypothetical question, which, after stating in detail the particulars of the plaintiff's injury, related at length the plaintiff's symptoms, treatment, and physical condition from that time to the time of the trial, and upon this statement asked the witness what, in his judgment, was the cause of the plaintiff's condition. To this question the witnesses each replied that the plaintiff's condition was the result of the injuries received by him in the accident. There was no error in the admission of the question. A question precisely similar in form was approved in *Selleck v. Janesville*, 100 Wis. 157.

5. The defendant proposed twenty-three questions for the special verdict, and the court refused to give them, and submitted instead eleven questions. The refusal to give the questions asked is now assigned as error. Many of the questions asked by the defendant are lengthy and involved, and careful examination of the issues convinces us that the material issues of the case were all covered by the special verdict

as submitted; hence it was not error to refuse the defendant's request. What is said upon this general subject in *Ward v. C., M. & St. P. R. Co.*, *post*, p. 215, will be found applicable here.

6. It appeared by the evidence that plaintiff's wife had nursed the plaintiff for a year, and the plaintiff's counsel argued to the jury that the plaintiff was entitled to recover the value of his wife's services in so nursing him, and said, "He is entitled to his wife's services, and no one can take them from him." To this remark the defendant objected on the ground that the plaintiff could not recover for his wife's services, because it was her duty to nurse him. In ruling on the question the court said: "The defendant company is not entitled to the services of a man's wife, and her services belong to her husband, as disclosed by the evidence here. If she has been compelled to nurse him in consequence of the injury, I see no reason why it is not a proper charge." To this remark exception was taken. We think there was no error in this ruling. The authorities are not uniform on the subject, but we think the court's ruling sustained by the better reason. The defendant should not be allowed to profit by reason of the loving care of the wife. *Varnham v. Council Bluffs*, 52 Iowa, 698; *Missouri, K. & T. R. Co. v. Holman* (Tex. Civ. App.), 39 S. W. Rep. 130; *Brosnan v. Sweetser*, 127 Ind. 1.

7. The plaintiff offered in evidence the annuity tables found in the Revised Statutes of Wisconsin (Stats. 1898, p. 2461), and the same were received in evidence under objection and exception. Mr. Fethers, in his argument to the jury, after computing the amount *Crouse* earned in a year and adding to it the annual cost of nursing and physician's services, making the whole amount $1,798, spoke as follows: "We have, then, under the lowest figure given by the testimony, a money loss of $1,798 a year to *George Crouse*,— $1,798 a year cash. Under the annuity tables, taking the

Crouse vs. Chicago & Northwestern R. Co.

lowest figure,— and you are entitled, under the testimony in this case, to consider if he will not live on beyond it, but taking that low figure according to the annuity tables, his money loss would be $19,247.59. At forty-one — say you start there — he was born on the 8th of January, I think, and he was injured on the 26th of July, so his nearest birthday would be nearer forty-one than to forty, and you get about forty and one-half he was then; but say that his nearest birthday is forty-one — his actual money loss would be $19,039.12. The difference between the two years, whichever is considered, is only $200. In other words, more than $19,000, considered from the standpoint of the expectancy of the annuity tables, in connection with the other testimony, would be his actual money loss should he live to that time." Counsel for defendant objected to the argument, and asked the court to instruct the jury that it was an improper argument to make on the question of damages, and the court replied: " I think that is proper. I overrule the objection." To the ruling of the court the defendant excepted.

Mr. Jeffris, in his argument to the jury, said, in respect to these annuity tables, as follows: " After this accident, *Mr. Crouse* may live ten, twenty, thirty, yes, he may live forty years, but we are not entitled to forty years' pay for his service and forty years' time. But the supreme court has laid down the rule upon which these things are figured on their present purchase value. If a man is paid the cash, it is limited to something like ten years." To the remark of Mr. Jeffris counsel for defendant objected upon the ground that it was an improper argument to make to the jury, and asked the court to instruct the jury that they were not to pay any attention to it. Thereupon the court ruled as follows: " *Court:* Well, I shall not instruct the jury any such thing." The defendant thereupon excepted to the ruling of the court, and the court then said of its own motion: " Yes, I instruct the jury that his remarks in regard

to the annuity tables, I think, are proper." To such remark and ruling of the court the defendant excepted. In view of the fact that the annuity tables were admitted in evidence, counsel for defendant requested the court to charge the jury as follows: " The annuity table received in evidence was received upon the theory that it would afford you some aid in determining the amount of damages. The table is not a rule for you to follow in assessing the damages. The makers of the annuity table did not take into account several things important in this case, namely, that the man injured might die before the end of his expectancy of life of some disease not caused by the injury; that he might not be willing to work to the end of his expectancy of life; that he might, before the end of his expectancy of life, be rendered incapable of work by disease not caused by the injury, and that he might be rendered incapable of work by reason of other accidents and injuries." This instruction was refused, and defendant excepted.

While the authorities are not entirely uniform on the question of the admission of standard tables showing the expectancy of life in injury cases where death has not resulted, it seems that the weight of authority is in favor of their admissibility. See note to *Union P. R. Co. v. Yates,* 40 L. R. A. 553, where the authorities are collated. This court held the annuity tables admissible in *McKeigue v. Janesville,* 68 Wis. 50 (which was a death case), " not as forming a legal basis upon which the jury might determine the probable length of the life of the deceased, but as evidence which the jury might consider with all the other evidence in the case upon that point." We see no very good reason why such tables should be admissible in a death case upon the question of probable length of life, and not in a case of personal injury, where damages for permanent injuries are sought. In both cases the question of probable length of life is an important one, which the jury must consider if

Crouse vs. Chicago & Northwestern R. Co.

they find for the plaintiff. It is true, the annuity tables are more favorable to the defendant than the tables of expectancy of life, but of this the defendant cannot complain. But it must be very certain that such tables do not form a mathematical basis for the estimation of damages as they were used with the direct sanction of the court in this case. You cannot take the amount a man was earning when injured, and multiply it by the figures in an annuity table, and thus reduce his damages to exact figures by the rules of arithmetic. This was done in this case, and the court said it was proper, and the verdict of the jury is so near the amount so figured out as to give ground for believing that the jury considered it as a rule to follow. Of course, there is no such rule. There are many other elements in the problem which must be considered. The plaintiff's ability to labor would almost certainly decrease with years, or by natural disease, or he might not desire to continue in his arduous employment. So we think the court erred in approving the mathematical rule laid down by the plaintiff's counsel, as well as in refusing the instruction offered by the defendant upon the subject. *Hunn v. M. C. R. Co.* 78 Mich. 513; *Harrison v. Sutter St. R. Co.* 116 Cal. 156; *Goodhart v. Pa. R. Co.* 177 Pa. St. 1, 5 Am. & Eng. R. Cas. N. S. 364.

8. In connection with each of the second, third, sixth, and eighth questions of the special verdict the defendant requested an instruction, in substance, that the burden of proof in each case rested upon the plaintiff, and that they must be satisfied to a reasonable certainty by the preponderance of the evidence, in order to answer the question in the affirmative. These instructions were all refused, nor was the substance of them given. Certainly it was applicable to the second question,— as to whether the culvert was negligently constructed and maintained,— and should have been given. But it is claimed that the rule as to burden of proof as to all these questions has been changed by the terms of sec. 1,

Crouse vs. Chicago & Northwestern R. Co.

ch. 220, Laws of 1893 (now subd. 1, sec. 1816, Stats. 1898).
This statute provides for a recovery where a railroad em-
ployee, without contributory negligence, is injured by a de-
fect in any locomotive engine, car, rail, *track*, machinery, or
appliance required by said company to be used in and about
the business of such employment, when such defect could
have been discovered by reasonable and proper care, tests,
and inspection; and proof of such defect shall be presumptive
evidence of knowledge thereof on the part of the company.

While we think the word *track*, in this law, clearly in-
cludes the roadbed upon which the track rests, we do not
see how the law affects the question of burden of proof as
to the second question. That question inquires whether
there were original defects in the culvert before the wash-
out. Until the plaintiff has shown that there were such
defects, the law does not begin to apply. He must first
show the defects, and must necessarily show them by pre-
ponderance of the evidence, and then the presumption of
knowledge of the defect steps in. As to questions 6 and 8,
the argument is somewhat different, but still we think the
instruction should have been given. By answers to these
questions the jury were to say whether the washout could
have been discovered by defendant's employees by the exer-
cise of reasonable care in time to prevent the accident, and
whether the track walker was negligent in not properly
inspecting the track. As to the sixth question, doubtless
the law raised a presumption, on a showing that the wash-
out existed, that the company had knowledge of it; but
this was a mere disputable presumption of fact, and when it
appeared that the washout had occurred within a few hours,
and that the company in fact had no notice, the question
whether the washout had existed so long under the circum-
stances that the company, by proper inspection, should have
learned the fact, or was negligent in not knowing it, was
still a question for the jury, and one upon which the burden

of proof was still upon the plaintiff. The law raised a presumption of knowledge of the washout, but not a presumption of negligence from want of knowledge. These remarks apply to the eighth question with equal force.

9. Upon the question of damages the court was requested to charge that the fact that the plaintiff was married was not to be considered in arriving at the amount of the damages, but refused. This charge should have been given.

10. One sentence of the charge seems to convey the idea that it was an absolute duty resting on the railway company to make the culvert safe, thus making the company an insurer. It seems probable from the context that this was not the intentional, but simply an inadvertent, use of language, but we call attention to it because there must be a new trial. Reasonable and ordinary care and prudence to make it safe, considering its uses and purposes, is the duty imposed on the company, and which it cannot delegate. It does not insure safety.

A general verdict was rendered under a long general charge in connection with the special verdict. While no specific objection appears in this case to the submission of such general verdict, attention is called to the discussion of the propriety of this course in the case of *Ward v. C., M. & St. P. R. Co., post,* p. 215. What is there said is precisely applicable to the present case.

We have found no other questions which seem necessary to be discussed.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

BARDEEN, J., took no part.

The appellant moved to set aside the clerk's taxation of costs.

*John T. Fish,* for the motion.

*O. H. Fethers, contra.*

The following opinion was filed April 4, 1899:

BARDEEN, J.    This is a motion to review the clerk's taxa-
tion of costs.    The appellant prevailed on the appeal.    The
respondent objected to two items in appellant's cost bill, as
follows:

Paid for printing case  ...................................... $282 00
Paid for printing brief...................................... 72 00

The clerk disallowed both items, on the ground that ap-
pellant had not complied with Rules VIII and IX of this
court.    The objection to the first item was that the printed
case violated Rule VIII, in that it contained the bill of ex-
ceptions in full, and not "so much of the record . . .
as may be necessary to a full understanding of the questions
presented for decision," and for the further reason that the
pages of the record were not referred to by numerals on the
left-hand margin of the page, under the words "Page of
Record."    The second item was objected to on the ground
that the appellant's brief did not comply with that part of
Rule IX which says, "Each statement and proposition therein
which is based upon the record must refer to the page of
the record as contained in the printed case upon which the
same is based."    Appellant admits that both case and brief
are susceptible to these objections, but it is said that, inas-
much as the entire bill of exceptions has been printed, the
penalty of disallowing costs upon failure to comply with
these provisions ought not to be inflicted.    The fact that it
is noted in the case, at the beginning of the alleged "Ab-
stract of the Bill of Exceptions," under the words "Page of
Record," that what follows may be found on pages 41 to
365 of the record, does not relieve from this infirmity.    The
purpose of the rule is to enable the court to refer to the
record with certainty and dispatch.    With the case as printed,
it is impossible to do so.    We have tested it in that regard,
and the result is vexatious.    Testimony in the printed case

Crouse vs. Chicago & Northwestern R. Co.

cannot be found in the record, except after considerable search and delay. The business of the court is so urgent and pressing as to require all possible aids in the consideration of cases. So imperative are such demands, that a strict adherence to the rules is of the utmost importance. We cannot relax from their rigor without destroying their purpose. It is the certainty of their enforcement that makes attorneys careful. In this case counsel made very little effort to abstract the record. Page after page is taken up with figures as to the height of water above the dam at Janesville. Several exhibits are printed at length that could have been abstracted or condensed into one twentieth of the space actually covered. Testimony of several witnesses is printed in full, the greater part of which could have been omitted as having no bearing on the real points involved. It frequently happens in the trial of cases at the circuit that a vast amount of rubbish and immaterial matter gets in, that has no bearing upon the questions involved on an appeal. Hence, as the rule says, the printed case should contain an abstract or abridgment of so much of the record as may be necessary to a full understanding of the questions presented for decision, and no more. A more lively appreciation of this rule would reduce the volume of printed matter submitted for our consideration, and somewhat lighten our labors.

The objections to the brief really rest upon the infirmities in the printed case. Neither case nor brief having been prepared in conformity to the rules named, the clerk very properly disallowed the items sought to be taxed therefor.

*By the Court.*— The motion to retax the costs is denied, with $10 costs, and the taxation by the clerk is affirmed.