# ECHO L. WELLS v. MINNEAPOLIS BASEBALL AND ATHLETIC ASSOCIATION.[1]

July 3, 1913.

Nos. 18,117—(167).

**Complaint — allegations of negligence.**

1. In this a personal injury action, the complaint contained sufficient allegations of negligence, and the objection to the reception of any testimony thereunder was rightly overruled.

**Baseball game — duty to spectators.**

2. One who maintains grounds to which the public is invited to witness games of baseball is not an insurer against the dangers incident to witnessing the game, but is required to use the care and precaution of the ordinary prudent person to protect the spectators against such dangers. He is not required to anticipate the improbable.

**Same — choice of seats by spectators.**

3. Persons who know and appreciate the danger from thrown or batted balls assume the risk, and they cannot claim the management guilty of negligence when a choice is given between a seat in the open and one behind a screen of reasonable extent.

**Question for jury.**

4. It is a question for the jury what precaution and care should be taken by the management of a baseball exhibition to warn and safeguard the spectators against the dangers incident to the game.

**Special damages.**

5. If plaintiff prevailed, she was entitled to recover as special damages the reasonable value of the nursing necessitated on account of the injuries, notwithstanding such nursing was rendered by a member of the family without expectation of payment.

**Evidence admissible.**

6. Evidence that in conspicuous places in the grand stand were signs in large letters, stating that the management will not be responsible for in-

[1] Reported in 142 N. W. 706.

Note. — As to the liability of one maintaining place of amusement to which the public are invited, for safety of patrons, see notes in 3 L.R.A.(N.S.) 1132; 19 L.R.A.(N.S.) 772; 32 L.R.A.(N.S.) 713; and 42 L.R.A.(N.S.) 1070.

juries received from thrown or batted balls, was admissible as tending to prove a precaution taken to warn spectators of the perils.

**Charge to jury.**

7. Parts of the charge *held* objectionable though not perhaps sufficient to require a reversal.

Action in the district court for Hennepin county to recover $5,275 for personal injury. The case was tried before Hale, J., who at the close of plaintiff's case and again at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $825 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and new trial granted.

*Kerr, Fowler, Ware & Furber,* for appellant.

*C. V. White* and *D. R. Thomas,* for respondent.

HOLT, J.

Appeal by the defendant from an order denying its motion in the alternative for judgment or a new trial.

The defendant maintains grounds in the city of Minneapolis to which the public is invited to witness games of baseball. An admission fee is ordinarily charged, but upon certain days ladies are admitted free. The ball grounds are on the block bounded by Blaisdell avenue on the west and Thirty-first street on the south. The old grand stand, in which plaintiff was injured, was built in the corner formed by the intersection of the streets mentioned. It was so constructed and arranged that the front seats, that is those nearest the players, and the parapet in front, were at least six feet from the ground; then passing up towards the rear, each row of seats was raised several inches above the row next in front of it. The home plate was on the line bisecting the angle formed by the streets mentioned. About 65 feet back of the home plate was the front row of a section of seats. Each row, in this section, being about 25 feet long, and perhaps increasing in length toward the rear. This section, together with the rows on either side thereof, running parallel to Thirty-first street and Blaisdell avenue, respectively, formed three

sides of an octagon. The length, however, of the rows on Thirty-first street was about 90 feet and on Blaisdell avenue nearly the same. These rows were broken by aisles running from front to rear. The grand stand was covered by a roof sloping slightly to the rear. The front, of course, was open, the space from the top of the parapet in front of the front seats to the roof being about 15 feet. Posts 8 inches square supported the roof in front. These were placed along the parapet referred to and about 20 feet apart, except the two behind the home plate, which were 25 feet apart, one at each end of the center section of seats above spoken of. Foul balls and foul tips frequently pass from the home plate where the batter stands toward the grand stand. Naturally that part of the grand stand back of the home plate is the most exposed to danger from such balls and tips and, to protect the spectators, the defendant had a wire or steel screen (through which the ball could not pass) which completely covered the opening from the roof down and extended between the two center posts mentioned and thence to the next adjoining post on either side, so that in all about 65 feet of the center of the grand stand was protected by screen.

Plaintiff alleged that on July 9, 1910, she attended a game and was struck with such force by a flying ball from the players that her collar bone was fractured; that the only way of protecting spectators from the dangers incident to the game was to place and maintain screens between the players and spectators; and that "the defendant did place and maintain in such position a screen or netting for the purpose aforesaid, but that defendant negligently constructed said screen or netting of insufficient size to furnish such protection; that the plaintiff saw said screen or netting and was ignorant of the fact that it was of insufficient size and was ignorant of the fact that a batted ball might pass the same and hit the spectators in said grand stand." The answer denies negligence and avers that the injury was accidental and further that the plaintiff was injured through her own negligence and that she assumed the risk of injury from flying balls.

Plaintiff testified that she took a seat in the front row of seats on the Thirty-first street side, about 10 feet west of the easterly end of

the screen. As there was an aisle and box seats in front of her, she was about 10 to 12 feet to the rear of the screen. She selected the seat. There were vacant seats more protected. She does not claim that the ball which struck her went through the screen. She thinks it curved around the end of it. Her companion, seated to her right, was of the same opinion, and also stated that she thought the screen extended to the east about 8 feet farther than where she was sitting. All the other 13 witnesses, who profess to know where the plaintiff was when she was hit, are agreed that she was seated farther east and beyond the screen.

It is not necessary to discuss each error assigned. They may be considered under the claim of appellant that the complaint does not state a cause of action; that the defendant was entitled to judgment; that the testimony of the value of the nursing rendered by plaintiff's mother should not have been received; that the testimony relating to the posting of certain notices in the grand stand was erroneously excluded; and alleged errors in the charge.

We think it sufficiently appears from the complaint that the danger of injury to spectators is incident to a game of baseball; that it is necessary for those who manage such public amusements to protect against these dangers by screens; that the defendant in the performance of this duty was negligent in not furnishing a screen of sufficient size to give protection and that plaintiff was ignorant of that fact. The complaint states a cause of action. Therefore, the court properly overruled the objection to the reception of any evidence thereunder.

The court left the jury to determine plaintiff's right to recover, either upon her own claim that she was within the screen, or, upon the defendant's, that she was outside when struck. Upon her theory, the defendant contends that the course of the ball was so unheard of that no duty rested upon defendant to protect her therefrom, and that if she was seated outside the screen, she knowingly assumed all risk from injury from foul balls. We are all agreed that, if plaintiff occupied the place she and her companion testify to, the defendant had performed its full duty for her protection, and there is no liability for the injury. It is inconceivable that a baseball, when

fouled by a batter, could curve around the end of the screen in the manner this ball is said by her to have curved and reach her. No one claims that it glanced from striking any post or object after the time it touched the bat and before it struck plaintiff. The defendant was not an insurer against all perils, nor was it guilty of negligence in failing to guard against improbable dangers· Therefore, if the court had submitted the case to the jury solely upon plaintiff's claim, or if all the evidence had sustained her as to her position in the grand stand, a direction for judgment would have been unavoidable.

But the court also left it to the jury to say whether a recovery should be had if plaintiff was seated outside the screen. And she may have been mistaken as to where she was seated. Upon this view, we think it cannot be said as a matter of law that there is no cause of action. It has been frequently held that one who invites the public to places of amusement such as theaters, shows, and exhibitions must exercise a high degree of care for the safety of those invited. As to stairways, platforms, walks and other structures, it may be said that the duty is somewhat similar in degree and nature to that owing from a common carrier to its passengers. Thompson, Negligence, §§ 995, 996 ; Scott v. University of Michigan, 152 Mich. 684, 116 N. W. 624, 17 L.R.A.(N.S.) 234, 125 Am. St. 423, 15 Ann. Cas. 515.

But this rule must be modified when applied to an exhibition or game which is necessarily accompanied with some risk to the spectators. Baseball is not free from danger to those witnessing the game. But the perils are not so imminent that due care on the part of the management requires all the spectators to be screened in. In fact, a large part of those who attend prefer to sit where no screen obscures the view. The defendant has a right to cater to their desires. We believe that, as to all who, with full knowledge of the danger from thrown or batted balls, attend a baseball game, the management cannot be held negligent when it provides a choice between a screened-in and an open seat, the screen being reasonably sufficient as to extent and substance. This is virtually the rule applied in Crane v. Kansas City, 153 S. W. 1076, where it is said: "Defendants were not insurers of the safety of spectators ; but, being

engaged in the business of providing a public entertainment for profit, they were bound to exercise reasonable care, i. e., care commensurate to the circumstances of the situation, to protect their patrons against injury. King v. Ringling, 145 Mo. App. 285, 130 S. W. 482; Murrell v. Smith, 152 Mo. App. 95, 133 S. W. .76. In view of the facts that the general public is invited to attend these games, that hard balls are thrown and batted with great force and swiftness, and that such balls often go in the direction of the spectators, we think the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls, for the use of patrons who desired such protection. Defendants fully performed that duty when they provided screened seats in the grand stand, and gave plaintiff the opportunity of occupying one of those seats.

And, if it had appeared clearly that plaintiff knew the dangers incurred by taking a seat in the open, it should be held that she assumed all risk of injury from balls thrown, or batted in the game. We do not think this knowledge conclusively appears. In the Crane case, supra, one of the stipulated facts was this: "Baseball is our national game, and the rules governing it and the manner in which it is played, and the risks and dangers incident thereto, are matters of common knowledge." But we do not think that all who attend baseball games would, or should, enter such a stipulation. Only those who have been struck with a baseball realize its hardness, swiftness, and dangerous force. Women and others not acquainted with the game are invited and do attend. It would not be either a safe or reasonable rule to hold that, in these games to which the general public is invited, no duty rests upon the management to protect from the dangers incident thereto other than by a proper screening of part of the seats. What precaution the ordinary prudent person furnishing a public amusement of this kind should take to warn and protect the spectators from the attendant dangers of which they may be ignorant, we think a question for the jury.

Over objection, plaintiff was permitted to show the value of the nursing rendered by her mother with whom plaintiff, although of age, was living. It does not appear that the mother expected pay

therefor. The authorities are not agreed that the value of services rendered under such circumstances is an element of recoverable damages. Goodhart v. Railroad, 177 Pa. St. 1, 35 Atl. 191, 55 Am. St. 705, and Morris v. Grand, 144 Mo. 500, 46 S. W. 170, are to the effect that the recovery may not include the value of services rendered gratuitously. In Indiana it is settled that an element of damage in a personal injury action is the reasonable value of nursing and caring for the one injured, regardless of whether rendered gratuitously or under promise to pay. In Pennsylvania Co. v. Marion, 104 Ind. 239, 3 N. E. 874, the court says: "The plaintiff having testified that the nurses who attended him while prostrated from the injury, did so voluntarily and without charge, was nevertheless permitted, over objection, to prove by his attending physician what their services were worth. This evidence was admissible under the rulings in City of Indianapolis v. Gaston, 58 Ind. 224, Ohio v. Dickerson, 59 Ind. 317. These services were necessary to ameliorate the condition and suffering of the plaintiff. That they were voluntarily and gratuitously rendered was for his benefit, and not for the benefit of the defendant. Klein v. Thompson, 19 Ohio St. 569." Brosnan v. Sweetser, 127 Ind. 1, 26 N. E. 555; Varnham v. City, 52 Iowa, 698, 3 N. W. 792; Crouse v. Railway Co. 102 Wis. 196, 78 N. W. 446, 778, are to the same effect. Belyea v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 61 Minn. 224, 63 N. W. 627, and other cases cited by the appellant are not in point, for the reason that the law placed the duty to furnish medical attendance and nursing upon another than the plaintiff in the case, at the suit of whom the defendant would be liable.

We adopt the rule followed in Iowa, Indiana, and Wisconsin to the effect that a plaintiff, who is entitled to recover special damages for nursing in a personal injury action, may recover the reasonable value thereof even though the nursing was rendered by a member of the family without expectation of compensation. Although services between members of a family or relatives are not often paid for in cash, the tacit understanding is that the recipient will reciprocate in kind, when occasion arises, and there is a moral obligation so to do. If the defendant's tort necessitated the nursing, it should pay the rea-

sonable value thereof. It is true that the recovery is limited to the amount agreed upon where the services have been rendered with the understanding that payment should be made, but it is also true that, if the agreed price is more than the reasonable value, the recovery cannot exceed such value. We therefore think that the amount alleged to have been paid or expended may be said to state, although not directly, nevertheless by permissible inference, the reasonable value. At any rate, we would not reverse on the ground that the value of the nursing was not alleged, because a slight amendment of the complaint would obviate the objection.

We also think that the testimony which was offered by the defendant that signs in large letters were posted at the entrance and in the grand stand in conspicuous positions should have been received. These signs were:

"The management will not be responsible for injuries received from thrown or batted balls.

"M. E. Cantillon,
"Prest."

As hereinbefore indicated, a jury might find that the defendant owed its patrons a duty other than providing some seats behind screens; that it must use proper care to impart notice of the danger incident to the game. It is true the defendant stated that it could not prove that the plaintiff saw these notices. But that is not decisive. The notice may serve a two-fold purpose. It may impart actual knowledge to the plaintiff, and posting it might tend to absolve defendant from the charge of negligence in failing to warn of danger. If the jury should conclude that, in posting these notices and screening a part of the stand for the use of those who sought protection, the defendant had performed its full duty to its patrons, then there can be no negligence and no recovery regardless of the plaintiff's actual knowledge of such notices. It may be contended that these signs were not in the nature of a warning and were not intended for that purpose. Conceding that the defendant may not escape liability by merely stating it will not be responsible, nevertheless we do think the signs convey information that injuries are apt to happen from thrown and batted balls, and are therefore in

the nature of a precaution to prevent injury. The signs as well as the screen bore upon the defendant's conduct with respect to precautions taken for the safety of the spectators, they also bore upon the question of plaintiff's assumption of risk. If the signs conveyed warning or information, the mere posting in conspicuous places in the grand stand made plaintiff's observation of them a question for the jury without direct proof that she saw them.

Fault is found with the court's charge in several respects, but, since there must be a new trial, it is not deemed necessary to discuss the errors based thereon, except that in one place the court left the jury to say whether the screen was constructed in a reasonably safe manner. There was no evidence that the screen was defective, or did not turn the ball. So that technically the court's statement was not correct, but no attention was called to the inaccuracy at the time and if that were the only error in the case, it would not be reversed. It may be also said that the question of defendant's negligence did not depend on the extent to which the screen should extend beyond the place plaintiff chose for her seat, but rather upon whether the screen furnished was one which the ordinary prudent person would deem of sufficient size to afford reasonable protection.

Order reversed and a new trial granted.