HARRY ALDES, A MINOR, BY BERTHOLD
M. ALDES, HIS FATHER AND NATURAL GUARDIAN,
AND ANOTHER v. ST. PAUL BALL CLUB, INC.

88 N. W. (2d) 94.

February 14, 1958—Nos. 37,289, 37,290.

*Gray & Gray* and *Milton Gray,* for appellants.
*John J. Sexton,* for respondent.

DELL, CHIEF JUSTICE.

These are appeals by plaintiffs from summary judgments entered in favor of defendant in two actions involving the same issues and consolidated for presentation to this court. The actions arise out of injuries sustained July 29, 1954, by plaintiff Harry Aldes, a minor, while he was a spectator at a baseball game in defendant's ball park. On that day plaintiff purchased a ticket for a grandstand seat for which he paid 50 cents. He watched from this seat until late in the game at which time he was approached by an usher, Tom Lilly, who was one of defendant's employees. Plaintiff and Lilly, a college student, were friends. The latter had to open the center-field door after the game was over and asked whether plaintiff would care to sit with him in the box seats until that time. Plaintiff accepted the invitation and accompanied Lilly to a box seat behind first base. Neither the seat which was originally purchased nor the box seat which they occupied was screened in. While seated in the box seat plaintiff was struck above the left eye by a misdirected baseball which was thrown during infield practice between the players' turns at bat in the first half of the ninth inning.

Plaintiff minor seeks in one action to recover for the personal injuries which he sustained. In the other action his father seeks to recover the expenses which he incurred and expects to incur as a result of those injuries. The case was presented to the trial court upon depositions and affidavits. Defendant's motion for summary judgment in each action was granted. These appeals followed.

■ It is clear that, had the minor plaintiff been struck while sitting in the seat for which he paid and from which he viewed most of the game, neither he nor his father would be entitled to recover. Normally, the management's duty to protect its patrons from thrown or batted

balls ceases when it offers the spectators a choice between screened-in or open seats[1] unless some reason exists requiring a fuller explanation of the perils involved.[2] No such reason is apparent here. The minor plaintiff, although only 12 years old at the time of the injury, was well acquainted with the dangers inherent in open seats. He had been playing baseball since he was 9½ years old and had attended several games at defendant's ball park, including 10 or 15 from the time he was 11, when he started going to games with Lilly. He was also aware that misdirected balls generally land in the box seats.

However, in this case the plaintiff was invited by one of defendant's employees to accompany him to a different seat from that which he had purchased. The question thus presented does not involve the adequacy of the safeguards which defendant was required to install in order to protect its patrons from the hazards of the game of baseball. Rather it is whether or not defendant, through its employee, was negligent in extending the invitation which induced plaintiff to move, and if so, whether the plaintiff by accepting the invitation assumed the increased risk of injury as a matter of law.

■ One may be negligent toward another by increasing the dangers to which he is ordinarily exposed and the negligent party will be liable for any injuries which are the natural and probable consequences of those acts. That the likelihood of being struck by a misdirected baseball was greater in the unprotected box seat than in the unprotected grandstand seat which plaintiff initially occupied is undisputed. The invitation therefore did expose him to a greater risk than he had

---

[1]Wells v. Minneapolis Baseball & Athletic Assn. 122 Minn. 327, 142 N. W. 706, 46 L. R. A. (N. S.) 606.

[2]Compare the following cases of persons who were unfamiliar with a sport: Wells v. Minneapolis Baseball & Athletic Assn. 122 Minn. 327, 142 N. W. 706 (women); Easler v. Downie Amusement Co. 125 Me. 334, 133 A. 905, 53 A. L. R. 847 (children); Thurman v. Ice Palace, 36 Cal. App. (2d) 364, 97 P. (2d) 999 (spectators at an ice hockey game in southern California). But see, Brisson v. Minneapolis Baseball & Athletic Assn. 185 Minn. 507, 240 N. W. 903 (adult of reasonable intelligence but limited experience with baseball held to assume risks of the game); Modec v. City of Eveleth, 224 Minn. 556, 29 N. W. (2d) 453 (woman held to community knowledge of the risks of attending ice hockey games).

accepted when he purchased his ticket. Whether or not defendant was negligent, however, is a question upon which reasonable men could differ and therefore properly for the trier of facts.

 Nor are we prepared to hold as a matter of law that in accepting the invitation plaintiff thereby assumed the risk of injury. A patron assumes only the risk of injury from hazards inherent in the sport, not the risk of injury arising from the proprietor's negligence.[3] Assumption of the risk is predicated upon a knowledge of the risk involved.[4] While it is evident from his own testimony that plaintiff could have appreciated the greater dangers involved in occupying a box seat if he had paused to consider them at the time Lilly suggested he move, it is not clear that he did so, and we see no reason for holding him to the same standard of sober reflection which we would require of an adult.[5] The workings of the mind of a boy of his age are not susceptible of ironclad rules. For this reason the law imposes upon him the duty to act only with the degree of care commensurate with his age, experience, and judgment.[6] The bonds of friendship with Lilly, the enthusiasm generated by the very nature of a baseball game, the unexpected suddenness of the invitation, and the anticipation of occupying a box seat for the first time could all have combined to deprive this youngster of the sound judgment which he might otherwise have exercised. At least we think it was a question of fact about which conflicting inferences might have been drawn. A trial was therefore in order.

Reversed.

---

[3]Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S. W. (2d) 318, 142 A. L. R. 858 (see especially part IV of the Annotation).

[4]Schrader v. Kriesel, 232 Minn. 238, 247, 45 N. W. (2d) 395, 400; City of Winona v. Botzet (8 Cir.) 169 F. 321, 329, 23 L. R. A. (N. S.) 204.

[5]Cf. Brisson v. Minneapolis Baseball & Athletic Assn. 185 Minn. 507, 240 N. W. 903.

[6]Kachman v. Blosberg, 251 Minn. 224, 87 N. W. (2d) 687; Deach v. St. Paul City Ry. Co. 215 Minn. 171, 9 N. W. (2d) 735; Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665; Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; Peterson v. Miller, 182 Minn. 532, 235 N. W. 15. And see, Restatement, Torts, §§ 464, 283, *comment e.*