Ronald ALWIN, Appellant,

v.

ST. PAUL SAINTS BASEBALL CLUB, INC., et al., Respondents.

No. A03–686.

Court of Appeals of Minnesota.

Dec. 16, 2003.

Mark D. Luther, St. Louis Park, for appellant.

Roger L. Rowlette, David E. Camarotto, Johnson & Lindberg, Minneapolis, for respondent.

Considered and decided by Randall, Presiding Judge; Minge, Judge; and Poritsky, Judge.*

## OPINION

MINGE, Judge.

Appellant challenges summary judgment dismissing his negligence action for injuries suffered when a baseball struck him as he returned from a restroom at a professional baseball game. Because we conclude that he primarily assumed the risk of such an injury, we affirm.

## FACTS

Appellant Ronald Alwin attended a St. Paul Saints baseball game at the Midway Stadium in St. Paul. He had a general admission ticket and was seated in the open-seating, bleacher section of the stands on the third-base side of the field. During the seventh or eighth inning, Alwin left his seat and went to the men's restroom located in the back of the grandstand on the third-base side of the field. This required Alwin to go down the steps of the bleacher section, walk across an area on the ground level near the concession stand, and up the stairway leading to the back of the grandstand and to the restroom. When Alwin was returning from the restroom and was close to the concession area, he was hit in the mouth by a foul fly ball. He was not watching the game, could not see the batter, and never saw the ball coming at him. As a result of the impact, Alwin lost a tooth and required extensive restorative dental procedures.

Respondent St. Paul Saints Baseball Club, Inc. (the Club), provides various safety precautions for its spectators. The Club provides seats behind home plate that are shielded by a protective net. Each admission ticket warns patrons that they assume the risks and dangers incidental to baseball, including being hit by a bat or batted ball. Appellant concedes that he did not read the warning on the ticket. There are also numerous, large warning signs posted throughout the stadium alerting spectators that they could be injured during the baseball game and pre-game warmup by a thrown or batted ball leaving the field of play. Finally, a loud-speaker announcement is made before the game begins, warning spectators to be alert for thrown or batted balls leaving the field of play.

## ISSUE

Does a spectator at a professional baseball game assume the risk of being struck by a foul ball when he is returning from the restroom?

## ANALYSIS

Alwin appeals the district court's grant of summary judgment in favor of the Club, claiming that questions of fact exist in determining whether the Club negligently breached its duty of reasonable care. "On appeal from summary judg-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ment, this court reviews whether any genuine issues of material fact exist and whether the district court erred in its application of the law." *Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 745 (Minn.2001). Summary judgment in a negligence action is appropriate if the record does not support any one of the elements required to establish the negligence claim: (1) duty; (2) breach of that duty; (3) injury; and (4) proximate cause. *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn.2001). Whether a duty exists is a question of law for this court to review de novo. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985).

■■ The initial inquiry in a negligence action against a landowner is whether the landowner owed the entrant a duty. *Baber v. Dill*, 531 N.W.2d 493, 495 (Minn. 1995). In general, a landowner has a "duty to use reasonable care for the safety of all such persons invited upon the premises." *Louis*, 636 N.W.2d at 318 (citations omitted). A ballpark owes its spectators only a limited duty, which is to offer the spectators a choice between screened-in seats and seats without protective netting. *Swagger v. City of Crystal*, 379 N.W.2d 183, 185–86 (Minn.App.1985), *review denied* (Minn. Feb. 19, 1986).

The record indicates that the Club has protected and unprotected seating areas, and has thus met this limited duty. Alwin's appeal asks this court to expand this current, limited duty to include an additional duty to protect spectators in other areas of the ballpark where they may not actually be watching the ballgame. He argues that, because he was not in the bleachers but was in the restroom-concession stand area, because the Club reasonably expected people to be in the restroom-concession stand area, and because he could not see the batter or game from that area, he was not a spectator who

assumed the risks inherent to the game. Alwin concludes that in his case the Club failed to use reasonable care in protecting him from foul balls by failing to erect protective netting in the restroom-concession stand area.

■■■ Our principal inquiry is thus to determine whether Alwin assumed a risk inherent to the game of baseball even though he was not seated in the bleachers when he was struck by a fly foul ball. Under the doctrine of primary assumption of the risk, a defendant landowner has no duty to protect an entrant from risk of harm when the entrant has assumed a well-known, incidental risk. *Wagner v. Thomas J. Obert Enters.*, 396 N.W.2d 223, 226 (Minn.1986). If the doctrine of primary assumption of the risk applies, then no further duty exists and the landowner cannot be held liable for negligence. *Id.*

■ Minnesota, like other states, has determined that certain sporting events, including baseball, present inherent risks that are well known to the public, and that anyone who attends those events assumes the risk of injury. *See, e.g., Modec v. City of Eveleth*, 224 Minn. 556, 562, 29 N.W.2d 453, 456 (1947) (noting common nature of and dangers involved in attending a baseball game); *Brisson v. Minneapolis Baseball & Athletic Ass'n*, 185 Minn. 507, 507, 240 N.W.2d 903, 903 (1932) (holding that a spectator sitting in temporary seats provided by management and located behind third base and outside the foul line assumes the risk of injury from foul balls); *Swagger*, 379 N.W.2d at 186 (declining to overrule application of primary assumption of the risk where spectator was injured by a wildly thrown softball). *See also Benejam v. Detroit Tigers, Inc.*, 246 Mich.App. 645, 635 N.W.2d 219, 225 (2001); *City of Milton v. Broxson*, 514 So.2d 1116, 1118–19 (Fla.App.1987); *Friedman v. Houston Sports Ass'n*, 731 S.W.2d 572, 575 (Tex.

App.1987). Signs warning of the dangers of watching baseball remind the spectator that he or she has primarily assumed the risk of watching the game and no duty lies with the ballpark against dangers incident to watching a baseball game. *Wells v. Minneapolis Baseball & Athletic Ass'n,* 122 Minn. 327, 335, 142 N.W. 706, 709 (1913).

Minnesota has also applied the primary-assumption-of-the-risk doctrine to spectators injured during other inherently dangerous sporting events. *See, e.g., Grisim v. TapeMark Charity Pro–Am Golf Tournament,* 415 N.W.2d 874 (Minn.1987) (holding that a golf tournament spectator assumes the risks inherent in being on a golf course and the only duty to the spectator is to provide a reasonably safe area to watch); *Modec,* 224 Minn. at 563–64, 29 N.W.2d at 456–57 (holding that summary judgment was appropriate because a spectator who was hit by a hockey puck at a hockey game assumed the risks incident to the game); *Jussila v. U.S. Snowmobile Ass'n,* 556 N.W.2d 234, 237 (Minn.App. 1996), *review denied* (Minn. Jan. 29, 1997) (holding that the doctrine of primary assumption of the risk applied when a spectator outside the normal seating area was hit by a snowmobile that left the race track).

Alwin relies on a Pennsylvania Supreme Court case in which a ballpark was found to have a duty to a ballpark patron who was hit in the eye by a batted ball during batting practice while the patron was standing in an interior walkway in the stadium's outer concourse. *Jones v. Three Rivers Mgmt. Corp.,* 483 Pa. 75, 394 A.2d 546, 551–52 (1978). Although *Jones* was a case of first impression in Pennsylvania involving a baseball stadium's liability for damages incurred by a patron who was struck by a batted ball, the court noted the well-settled principle that a ballpark patron knowingly accepts the reasonable risks inherent in and incident to the game. *Id.* at 549, n. 5. The court's finding of duty was based on the specific architectural feature of the stadium. It concluded that the open archways that forced fans to use unprotected areas to arrive at the game were unique, created a risk that was not an inherent feature of the spectator sport of baseball, and were not compelled by or associated with the manner in which baseball is usually played or viewed. *Id.* at 551–52.

*Jones* is not persuasive here. We are not faced with a distinct architectural feature of Midway Stadium. *Jones* would start us down the slippery slope of drawing a line between risk and protected areas of the stadium for the typical spectator. In any event, we note that the *Jones'* court's reasoning concurs with the general rule that a spectator must show more than just being hit by a baseball to recover damages. *Id.*

There is no Minnesota caselaw that distinguishes between Alwin's classification as a spectator in the stands versus in the concession area. In both areas, Alwin is a spectator or patron within the ballpark. As a spectator, Alwin primarily assumes the risk inherent to the game, which includes being hit by a foul ball. *See Wells,* 122 Minn. at 334–35, 142 N.W. at 709. Any other characterization of Alwin's status would create difficulty in applying this well-established, general rule. For example, if a walking vendor obstructs a spectator's view in the stands and a ball strikes the spectator, would that spectator have a cause of action? By following the general rule that a spectator assumes the risk inherent to the baseball game, we are not, however, extending the rule to a situation in which a ballpark creates a separate amusement or activity within the ballpark unrelated to the traditional ballgame. *Cf.*

*Aldes v. Saint Paul Ball Club, Inc.,* 251 Minn. 440, 442–43, 88 N.W.2d 94, 96–97 (1958) (declining to apply primary-assumption-of-the-risk doctrine where 12–year–old child is invited to sit in an unprotected box seat rather than in the protected seat for which he had ticket because he was exposed to a greater risk than he had accepted when he purchase his ticket). We are also wary that a common-law change to the established rule could create conflict over how the changes might apply to baseball games held on school or community baseball fields.

We are cognizant of the history of, and difficulty at times in, applying the primary-assumption-of-the-risk doctrine. *See* Michael K. Steenson, *The Role of Primary Assumption of Risk in Civil Litigation in Minnesota,* 30 Wm. Mitchell L.Rev. 115 (2003). We conclude, however, that it is not appropriate here to change a well-established rule applying the primary-assumption-of-the-risk doctrine where a spectator at a baseball game is injured by a risk inherent to the game, such as being struck by a foul ball. Such modification of the law is for the legislature.

Here, the facts are undisputed that Alwin was a baseball fan, had been to many games in his lifetime, and understood the risk of being hit by a foul ball while viewing the game. In addition, the Club printed warnings on the backs of admission tickets, provided a number of seats behind a protective net, and posted numerous warning signs within Midway Stadium warning spectators that they could be injured by a "thrown or batted ball or a bat leaving the field of play." Although these were not necessary to establish assumption of risk and avoid liability, they highlight the principle that Alwin primarily assumed the risk inherent to attending a baseball game, including being hit by a foul fly ball while walking near the concession area.

## DECISION

Because Alwin primarily assumed the risk as a spectator of an inherently dangerous sport, he cannot recover damages for his injuries when he was struck by a foul fly ball while returning to his seat from the restroom, and the district court did not err in granting summary judgment.

**Affirmed.**